1
2
3
4
5

AFSHIN SIMAN
LAW OFFICE OF AFSHIN SIMAN
6210 Wilshire Blvd., Suite 211
Los Angeles, CA 90048
(424) 229-9778
siman@simanlawfirm.com

6
7
8
9
10
11
12

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Pro Hac Vice

13

Attorneys for Plaintiff and the Putative Class

14

15
16

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| **MICHAEL TRUJILLO,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**FREE ENERGY SAVINGS COMPANY, d/b/a QUALITY CONSERVATION SERVICES**, a Delaware limited liability company,<br><br>Defendant. | Case No. 5:19-cv-02072-ODW-SP<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>Date: May 11, 2020<br>Time: 1:30 PM<br>Judge: Hon. Otis D. Wright II<br>Place: Courtroom 5D<br><br>Complaint Filed: October 29, 2019 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

I.      INTRODUCTION ...............................................................................1

II.     SUMMARY OF THE CLAIMS...........................................................2

III.    ARGUMENT ......................................................................................2

        A.      The Supreme Court's *AAPC* Ruling Is Unlikely To Have Any
                Bearing On Plaintiff's Claims..................................................3

                1.      The *AAPC* case concerns the constitutionality of a debt
                        collection exemption to the TCPA, which is not implicated
                        by this case .................................................................3

                2.      Plaintiff's DNC claim will not be affected by *AAPC* in any
                        way................................................................................6

                3.      The *Landis* factors do not support granting a stay...............7

IV.     CONCLUSION ................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Am. Ass'n of Political Consultants, Inc. v. FCC*,

    923 F.3d 159 (4th Cir. 2019) ..................................................*passim*

*Am. Ass'n of Political Consultants, Inc. v. Sessions*,

    323 F. Supp. 3d 737, (E.D. N.C. 2018) ........................................3–4

*Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320 (2006)......................4

*Barr v. Am. Ass'n of Political Consultants, Inc.*,

    No. 19-631(U.S. Jan. 10, 2020).................................................1, 3

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,

    490 F.3d 718 (9th Cir.2007) ...........................................................9

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ...................................................8

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,

    498 F.3d 1059 (9th Cir. 2007) .......................................................8

*Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) ..............................*passim*

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)...4–5

*Integon Preferred Ins. Co. v. Camacho*, No. 1:16-cv-01496-AWI-SAB,

    2018 WL 6620342 (E.D. Cal. Dec. 18, 2018).....................8, 9, 10

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ..............................11

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) ...........................................7, 8, 11

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ........................................8

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) ........................................4

## STATUTES, RULES, AND OTHER SOURCES

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a),

    129 Stat. 584 (2015) .......................................................................3

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* ...............3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Free Energy Savings Company, d/b/a Quality Conservation Services ("Defendant" or "QCS") violated the Telephone Consumer Protection Act ("TCPA") by sending unsolicited, autodialed text messages to consumer cell phones without prior express written consent. Yet rather than acknowledge its actions—let alone take any responsibility—QCS instead asks the Court to stay this matter pending the Supreme Court's resolution of *Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631(U.S. Jan. 10, 2020), a constitutional question regarding an exemption to the TCPA that isn't even at issue in this case. Defendant's arguments fail, and the Court should deny the requested stay.

To hear QCS tell it, the Supreme Court is now considering the *AAPC* case and will "likely moot" Plaintiff's autodialer claim by declaring the TCPA's restrictions of automated calls unconstitutional—upending the Act itself. This presents no basis for a stay. Despite QCS's assertion that *AAPC* is "directly-on-point" and "cuts to the heart of" Trujillo's claims, that isn't accurate: the TCPA provision at issue before the Supreme Court in *AAPC* is a content-based exemption for certain debt collection calls, which if actually found to be unconstitutional, is readily severable from the TCPA and not at issue in this case. No debt collection calls are at issue here. Moreover, Trujillo has plead that QCS violated the National Do Not Call ("DNC") registry—claims that don't require proof that QCS used an automatic telephone dialing system to make the calls. As a result, the forthcoming opinion in *AAPC*, however it is decided, won't prove dispositive of any of Plaintiff's causes here.

Ultimately, the *Landis* factors are not as favorable to QCS as it contends, and the Court should deny Defendant's Motion to Stay.

## II.   SUMMARY OF THE CLAIMS

Trujillo alleges that QCS violated the TCPA by sending unsolicited, autodialed text messages to his cellphone and to the cellphones of many other consumers, all of whom never provided prior express written consent to receive such calls. (*See* Compl., dkt. 1 at ¶¶ 6, 27.) Trujillo seeks certification of two classes, each rooted on a different cause of action—the first class and cause of action are based on Defendant's violation of the TCPA's prohibition of the use of an automatic telephone dialing system ("ATDS") without prior express consent. (*Id.* ¶¶ 28, 34–39.) The second is based on QCS's transmission of unsolicited text messages to consumers who have registered their numbers on the National Do Not Call registry. (*Id.* ¶¶ 28, 40–45.)

Defendant's brief outlines certain rebuttal arguments in its characterization of the case facts, including its assertions that Plaintiff's wife supposedly provided Plaintiff's phone number and that the messages were "purely informational" rather than telemarketing. (Def. Mot. to Stay, dkt. 31, at 3.) None of QCS's untested, summary judgment-type arguments are appropriately raised or germane to the Motion to Stay.

## III.   ARGUMENT

Defendant's apparent confidence that restrictions on the use of autodialers will be declared unconstitutional is based on a mischaracterization of both the issue before the Supreme Court and the holdings of Circuit Courts on the matter. The *AAPC* case concerns an exemption to the TCPA for certain debt collection calls that are not at issue here, and only a (highly unlikely) decision by the Supreme Court to declare the entire statute unconstitutional would have any bearing on this case—and even then it could only impact Plaintiff's ATDS claim while the DNC class and claim would not be affected. A stay pending QCS's pie-in-the-sky expectation is

not appropriate. As a result, the *Landis* factors of a stay are unsupported here, and the Court should accordingly deny Defendant's motion.

**A.    The Supreme Court's *AAPC* Ruling Is Unlikely to Have Any Bearing On Plaintiff's Claims.**

QCS asks the Court to stay the case pending the Supreme Court's ruling in the *AAPC* matter. However, Defendant's motion overstates the scope of the Supreme Court's review, which is far less likely to impact this litigation than QCS posits. As a stay pending resolution of an issue that bears no relation to Plaintiff's complaint is inappropriate, QCS's request for a stay here should be rejected.

**1.    The *AAPC* case concerns the constitutionality of a debt collection exemption to the TCPA, which is not implicated by this case.**

Defendant's motion to stay is premised on the Supreme Court's decision to grant *certiorari* and review the Fourth Circuit's recent ruling in *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019). *See also Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631(U.S. Jan. 10, 2020). The *AAPC* case concerns a challenge to the constitutionality of a TCPA exemption for debt collection calls. In 2015, Congress enacted a third exemption[1] to the TCPA's ban on automated calls to permit calls "made solely to collect a debt owed to or guaranteed by the United States." *AAPC*, 923 F.3d at 162 (citing Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a), 129 Stat. 584, 588 (2015)).

In 2016, AAPC and several other plaintiffs challenged the debt collection exemption to the TCPA as unconstitutional in the Eastern District of North Carolina. *See Am. Ass'n of Political Consultants, Inc. v. Sessions*, 323 F. Supp. 3d

---

[1] The first two exemptions, included in the TCPA when it was originally enacted in 1991, are for calls made for emergency purposes and calls made with the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

737, 739 (E.D. N.C. 2018). The court ultimately granted summary judgment in favor of the defendant, finding that: (1) the TCPA's government-debt exemption was a content-based restriction of speech; but (2) the exemption withstood strict scrutiny and therefore was not unconstitutional. *Id.* at 743–44.

On appeal, the Fourth Circuit vacated and remanded the district court's findings. The Fourth Circuit agreed that the government-debt exemption was a content-based restriction on speech, but held that it could not withstand strict scrutiny because it is "woefully underinclusive" and impedes the compelling privacy interest that the TCPA was enacted to protect. *AAPC*, 923 F.3d at 168–170. Per the Fourth Circuit, the exemption doesn't further a compelling interest because it "leaves appreciable damage to that supposedly vital interest unprohibited." *Id.* at 170 (quoting *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2232 (2015)).

Yet rather than strike the entire prohibition on unsolicited automated calls or declare the TCPA itself as unconstitutional, the Fourth Circuit ordered the Supreme Court's "preferred remedy": severance of the government-debt exemption from the TCPA. *Id.* at 171–72. The Fourth Circuit explained that severance was appropriate for several reasons. First, severance of a flawed portion of a statute is often the Supreme Court's "required course" to "limit the impact of its ruling of constitutional infirmity" and leave the valid remainder of a statute intact. *Id.* at 171 (citing *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010); *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328 (2006)). Second, the preference for severance is bolstered by the TCPA's explicit mandate that if any part of the Act "is held invalid, the remainder . . . shall not be affected." *Id.*; 47 U.S.C. § 608. Finally, the Court noted that the automated call ban would not be undermined by severance because "[f]or twenty-four years, from 1991 until

2015, the automated call ban was 'fully operative'" without the government-debt exemption. *AAPC*, 923 F.3d at 171 (citing *Free Enter. Fund*, 561 U.S. at 509).

The Ninth Circuit, which of course governs this Court, reached the same conclusions in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). "The newly enacted exception [for government-debt calls] did not suddenly and silently become so integral to the TCPA that the statute could not function without it." *Id.* at 1157. As such, the Court similarly found that severing the unconstitutional exemption "preserves the fundamental purpose of the TCPA" and restores the Act to a content-neutral state. *Id.*

Here, Trujillo's complaint does not relate to the government-debt collection exemption in any way. Defendant insists that the Supreme Court will "likely moot" Plaintiff's ATDS claim by declaring the entire automated call ban unconstitutional, which is the only scenario in which the *AAPC* decision could impact this case. (*See* Dkt. 31, at 13.) Plaintiff doesn't presume to divine with any certainty how the Supreme Court will rule, but QCS's prediction that a nearly thirty-year-old statute will be thrown out due to the unconstitutionality of a five-year-old exemption is rather difficult to envision. While QCS claims that the "general rule" for remedying constitutional violations is that offending portions of a statute cannot be severed, it wholly fails to cites *any* authority for such a proposition. (*Id.* at 1.) This is because the opposite is true: as detailed in both *AAPC* and *Duguid*, severance is not only preferred by the Supreme Court but required by the TCPA itself. *AAPC*, 923 F.3d at 171–72; *Duguid*, 926 F.3d at 1156–57.

Most inexplicably of all, QCS claims that "several Circuit courts have held" that the *automated-call ban* violates the First Amendment. (Dkt. 31, at 1.) This is demonstrably false. In the two Circuit court decisions on this issue, *AAPC* and *Duguid*, both the Fourth Circuit and the Ninth Circuit concluded that the 2015

exemption to the TCPA for government-debt collection calls was unconstitutional and severable from the restrictions on automated calls—not the entire prohibition on using an ATDS to make unsolicited calls. *AAPC*, 923 F.3d at 171–72; *Duguid*, 926 F.3d at 1156–57. QCS's description of these holdings as having declared unconstitutional the TCPA's entire section proscribing unsolicited, autodialed calls seriously misreads the cases.

The upcoming review of *AAPC* by the Supreme Court will consider the constitutionality of the government-debt exception that was added to the TCPA relatively recently. That exception is not applicable to this case, as Plaintiff's claims are based on the use of an ATDS to send telemarketing text messages to consumers without consent—nothing about debt collection is at issue. Barring an implausible upending of the entire TCPA, the *AAPC* opinion is unlikely to have any bearing on this matter. Accordingly, the Court should reject QCS's bid for a stay.

### 2. Plaintiff's DNC claim will not be affected by *AAPC* in any way.

Even if the Supreme Court were to abandon its own preference for severance and declare the entirety of the TCPA's unsolicited automated call restrictions unconstitutional, Plaintiff has alleged a cause of action for violation of the National Do Not Call registry that would not be affected in any case. The DNC claim does not depend on the use of ATDS technology to send the text messages—rather, it depends on whether repeated text messages were sent to consumers like Plaintiff who had registered on the National DNC. (*See* Dkt. 1 at 41–45.)

QCS is aware that this claim will not be affected by the *AAPC* ruling, briefly addressing the DNC claim only at the end of its motion as supposedly "meritless" and therefore not enough to justify moving forward with the case. (Dkt. 31 at 12–13.) Plaintiff respectfully disagrees. As a preliminary matter, and just as is the case

with the materials introduced by QCS in its factual background, Defendant's contention that Plaintiff's DNC claim is "meritless" has no place in or bearing on a motion to stay. Further, the Supreme Court in *Landis*—the case that sets forth the standard for granting a stay—provided that only in "rare circumstances" should a party to a case "be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). Here, Defendant is asking the Court to compel Plaintiff to stand aside while another litigant settles a rule of law that could *possibly* (but not likely) define Trujillo's rights on *one* claim and will certainly not affect his other claim for relief. Plaintiff should not be made to wait for the indefinite resolution of *AAPC* before he may seek redress for QCS's offensive text messages.

Plaintiff's claims do not arise from government-debt collection calls, which are the only practice certain to be affected by the Supreme Court's upcoming decision in *AAPC*. QCS cannot credibly suggest that the Supreme Court is certain— or even likely—to junk the TCPA's long-standing ban on unsolicited autodialed calls, and the *AAPC* ruling will have no bearing whatsoever on Plaintiff's claims premised on QCS's violations of the National DNC registry rules. This is not one of the "rare circumstances" in which a plaintiff must be made to stand aside—the Court should deny Defendant's motion.

### 3.    The *Landis* factors do not support granting a stay.

Following its appraisal of the *AAPC* decision, Defendant argues that a stay is supposedly favored by each of the *Landis* factors. QCS's analysis again misses the mark. The purported hardships described by Defendant are based on its (unfounded) assumption and supposed "probability" that the Supreme Court will declare the entire TCPA unconstitutional. (*See* Dkt. 31 at 8.) A stay of this action under *Landis* is not supported.

1       In *Landis*, the Supreme Court acknowledged that courts have inherent power

2 to control their own dockets, which includes the power to stay. *See Landis*, 299

3 U.S. at 254. However, any party seeking a stay "must make out a clear case of

4 hardship or inequity in being required to go forward, if there is even a fair

5 possibility that the stay for which he prays will work damage to someone else." *Id.*

6 at 255. As noted above, only in "rare circumstances" will a party be compelled to

7 stand aside while a litigant in another case settles the rule of law that will define the

8 rights of both. *Id.*

9       As Defendant points out, the Ninth Circuit has distilled a three-factor test of

10 competing interests to weigh when considering granting a stay under *Landis*: (1) the

11 possible damage that may result from granting a stay; (2) the hardship or inequity

12 that a party may suffer by going forward; and (3) "the orderly course of justice

13 measured in terms of the simplifying or complicating of issues, proof, and questions

14 of law which could be expected to result from a stay," commonly referred to as

15 judicial economy. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)

16 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). It also bears

17 mentioning that a stay "cannot be imposed only for judicial economy" and "cannot

18 be indefinite and result in undue delay." *Integon Preferred Ins. Co. v. Camacho*,

19 No. 1:16-cv-01496-AWI-SAB, 2018 WL 6620342, at *10 (E.D. Cal. Dec. 18,

20 2018) (citing *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d

21 1059, 1066–67 (9th Cir. 2007)).

22       Defendant's assessment of these factors is misguided. First, QCS asserts that

23 a stay poses no risk of harm to Plaintiff, going so far as to say that Trujillo would

24 suffer harm if the case is *not* stayed because, once again, QCS is confident that the

25 entire TCPA will be stricken by the Supreme Court. (Dkt. 31, at 6–7.) Defendant's

26 argument ignores the injunctive relief sought in the Complaint, which is necessary

27

28

to prevent QCS from continuing its practice of sending unsolicited text messages to Plaintiff and the class members. (*Id.* at 12 (seeking "[a]n injunction requiring Defendant to cease all unsolicited text activity"); *see also id.* at ¶¶ 6, 33.) Every month that this matter is delayed is another month for Defendant to continue its automated telemarketing campaign unchecked and exacerbate the harms at issue in the case. And as Defendant suggests, the current health crisis adds even more uncertainty to when the Supreme Court may rule on *AAPC*—the stay sought by QCS is indefinite in nature, and it should not be granted. *See Integon*, 2018 WL 6620342, at *10.

Further, the notion that Plaintiff would more likely be harmed if a stay is not granted is based on the unfounded belief that the ban on autodialed calls will cease to exist after the Supreme Court examines the *AAPC* case. As explained above, there is no support for such belief—instead, prevailing authority on severability confirms that it is highly unlikely. *See AAPC*, 923 F.3d at 171–72; *Duguid*, 926 F.3d at 1156–57. And of course, courts have long recognized that the delay that results from a stay can harm Plaintiffs because it threatens the availability of evidence. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir.2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). The suggestion that delay helps Plaintiff is specious.

Likewise, QCS's claim that the potential hardship or inequity it will supposedly experience "strongly supports a stay" is rooted in its same unlikely prediction that the entire ATDS provision will be stricken. (*See* Dkt. 31, at 9.) Once again, this could only occur if the Supreme Court rejects its own precedent and elects to eviscerate the TCPA in response to a recently-added, potentially unconstitutional exemption (that is not implicated by this case). *See AAPC*, 923

F.3d at 171. And again, even if Defendant's long-shot prediction were to occur, Plaintiff's class claim for violation of the DNC registry will remain intact. In other words, the Supreme Court's decision will not excuse QCS from answering for the text messages sent to Plaintiff and the class members—any resources or expense associated with class discovery and litigating the case will still be required after the *AAPC* ruling is issued.[2]

Importantly, judicial economy would not be served by a stay. Defendant's claim that the *AAPC* decision could be "outcome-determinative" in this matter is misleading for several reasons. (Dkt. 31 at 9.) First, and as outlined above, this case does not involve any government-debt collection calls subject to the exemption challenged in *AAPC*. 923 F.3d at 162–63. Thus, nothing short of the Supreme Court dismantling the prohibitions on autodialers could impact this case, and the severability option preferred by the statute and the Supreme Court makes such an outcome unlikely. *Id.* at 171–72; *Duguid*, 926 F.3d at 1156–57. Second, even if the *AAPC* ruling were to impact Plaintiff's ATDS claim, his DNC claim will not be affected and this case will proceed. To the extent that "judicial efficiency" may be served by putting this case on hold for an indefinite period of time, simply to wait and see if the Supreme Court might declare a large swath of the TCPA unconstitutional and undermine the basis for just *one* of Plaintiff's claims, it is not enough to justify the requested stay. *See Integon*, 2018 WL 6620342, at *10.

---

[2] Defendant briefly suggests that it would suffer prejudice in going forward with this case given the impact of the national pandemic on its operations. (*See* Dkt. 31 at 9.) Care can be taken to ensure that no in-person meetings or depositions are required until it is safe to do so. A blanket stay, however, only injects more uncertainty into QCS's request as no one can (and Defendant does not) predict when business may return to "normal" for companies across the country, including QCS.

In addition to the *Landis* factors, QCS claims that a stay in this case would further the interests of the public and of non-parties. (Dkt. 31 at 10–11.) Repeating its refrain that the Supreme Court will gut the TCPA, Defendant contends that the public interest would be served by "avoiding the enforcement" of a supposedly unconstitutional statute. (*Id.* at 10) (citing *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)). Aside from this not being a factor in considering a stay, it is simply incredible to suggest that the public interest would be served by ceasing enforcement of the TCPA. The statute was enacted to protect the public from "intrusive and unwanted phone calls," and the portion at issue in *AAPC* (the government-debt exemption) was deemed unconstitutional for *failing* to protect those interests *enough*. *See AAPC*, 923 F.3d at 161, 168–69. Defendant's argument for protecting non-parties is similarly off-point (and self-serving) as QCS warns of "mass subpoenas" and its own declared interest in deposing class members. (Dkt. 31 at 11.) Though exaggerated, these are potential risks in any class discovery that will not be ameliorated by a stay—thankfully, they can (and surely will) be limited by case management order, the parties themselves, and the Federal Rules concerning discovery.

Finally, QCS points to other cases where stays have been entered. As explained at length, this case is different. There are no debt collection allegations here and the DNC registry claims will be unaffected by *any* ruling.

At the end of the day, there is no support for entering a stay here. This is not one of those "rare" instances where a party should be made to stand aside while a pertinent rule of law is decided. *Landis*, 299 U.S at 255. Rather, QCS is asking that Plaintiff's case be postponed so that Defendant can wait and hope, sincerely or otherwise, that review of a discrete (and here, immaterial) exemption to the TCPA's automated-call ban balloons into a wholesale demolition of the law and relieves

QCS and other companies of all restrictions on their automated telemarketing. Given that this case does not implicate the debt-collection exception that the Supreme Court is poised to review, and because even Defendant's ideal ruling could only impact one of Plaintiff's two claims, granting the requested stay would be inappropriate. Accordingly, Defendant's motion should be denied.

## IV.    CONCLUSION

The Court should deny Defendant's motion to stay. The Supreme Court's forthcoming decision in *AAPC* will not be dispositive of Plaintiff's claims, and the *Landis* factors weigh in Plaintiff's favor. As such, the Court should deny the motion, permit the parties to commence discovery, and award any such relief as it deems necessary and just.

Respectfully Submitted,

**MICHAEL TRUJILLO**, individually and on behalf of all others similarly situated,

Dated: April 20, 2020

By: ___/s/ Patrick H. Peluso___
     One of Plaintiff's Attorneys

Afshin Siman (Cal. Bar No. 309956)
Law Office of Afshin Siman
6210 Wilshire Blvd., Suite 211
Los Angeles, CA 90048
Telephone: (424) 229-9778
siman@simanlawfirm.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300

Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809
*Pro Hac Vice

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on April 20, 2020.

/s/ Patrick H. Peluso