Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Kristapor Vartanian (SBN 275378)
kvartanian@kcozlaw.com
Matthew A. Keilson (*pro hac vice* forthcoming)
mkeilson@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

*Counsel for Defendant Free Energy Savings Company, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TRUJILLO, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>FREE ENERGY SAVINGS COMPANY, LLC, D/B/A QUALITY CONSERVATION SERVICES,<br><br>   Defendant. | Case No: 5:19-cv-02072-ODW-SP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO PARTIALLY STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: November 2, 2020<br>Time: 1:30 PM<br>Ctrm: 5D (5th Floor)<br>   350 West 1st Street<br>   Los Angeles, CA 90012<br><br>Hon. Otis D. Wright II<br><br>Compl. Filed: October 29, 2019<br><br>Trial Date: August 24, 2021 |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 2, 2020, at 1:30 P.M, in Courtroom 5D (5th Floor) of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Free Energy Savings Company, LLC d/b/a/ Quality Conservation Services ("QCS") will and hereby does move the Court for an Order partially staying this action pending a decision on its forthcoming motion for summary judgment and the United States Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511 (Jan. 9, 2020), which will resolve a central issue in this litigation: whether the definition of automatic telephone dialing system ("ATDS") in the Telephone Consumer Protection Act ("TCPA") encompasses any device that can "store" and "automatically dial numbers," even if the device does not "us[e] a random or sequential number generator."  If the Supreme Court answers that question in the negative, Plaintiff's ATDS claim against QCS will end, since the system at issue cannot randomly or sequentially generate numbers.  That will effectively end this entire litigation, given that QCS will, before this Motion is resolved, be moving for summary judgment on the only other claim Plaintiff asserts in this lawsuit.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 21, 2020.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the declarations in support filed concurrently herewith, the complete file and record in this action, and such further and other matters as the Court may allow.

KABAT CHAPMAN & OZMER LLP

DATED:  September 19, 2020.         By: /s/ *Ryan D. Watstein*
                                          Ryan D. Watstein (*pro hac vice*)
                                          *Counsel for Defendant*

1

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    RELEVANT LEGAL AND FACTUAL BACKGROUND ........................... 3

    A.    Plaintiff Sues Over Two Text Messages Offering Free Services that California Law Requires Be Offered to Low-Income Consumers. ...... 3

    B.    QCS's Forthcoming Summary Judgment Motion Will Show that Plaintiff's DNC Claim Is Meritless, Including Because the Messages Plaintiff Received Are Non-Marketing and Therefore Not Actionable. .......................................................................................... 4

    C.    The Definition of ATDS Is Unsettled Nationwide. ............................. 5

    D.    The Supreme Court Will Imminently Define ATDS in Facebook. ...... 6

    E.    The Parties' Conferral on a Stay Pending *Facebook*. .......................... 7

III.   ARGUMENT .................................................................................................. 8

    A.    Legal Standard on Motion to Stay. ..................................................... 8

    B.    All Relevant Considerations Favor Granting a Partial Stay. ............... 9

        1.    A Stay Poses No Risk of Damage or Harm to Plaintiff. ........... 9

        2.    QCS Will Suffer Hardship and Inequity If the Court Does Not Enter a Partial Stay. .......................................................... 12

        3.    A Stay Will Promote Judicial Efficiency and Preserve Judicial Resources. ................................................................. 14

        4.    A Stay Will Further the Interests of the Public and Non-Parties, Including by Preventing Invasive Discovery Implicating Low-Income Individuals Who Received Free Weatherization Services. .......................................................... 15

        5.    Courts Routinely Grant Stays Where Supreme Court Decisions May Impact the Case. ............................................. 16

IV.    CONCLUSION ............................................................................................. 18

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ACA International v. Federal Communications Commission ("ACA"),*
5
    885 F.3d 687 (D.C. Cir. 2018) ............................................................... 5

6

*Allan v. Penn. Higher Ed. Assis. Ag.,*
7
    F.3d, 2020 WL 4345341 (6th Cir. July 29, 2020) ................................. 5

8

*Beal v. Outfield Brew House, LLC*
9
    No. 20-1961 (8th Cir. July 14, 2020) ................................................... 17

10

*Bittner v. Franchise World Headquarters LLC,*
11
    No. 3:20-cv-00522 (Aug. 11, 2020) ....................................................... 7

12

*Blower v. Portfolio Recovery Associates, LLC,*
13
    No. 3:19-cv-2270 (S.D. Cal. July 24, 2020) .......................................... 7

14

*Boger v. Citrix Systems, Inc.,*
15
    No. 8:19-cv-1234 (D. Md. Aug. 4, 2020) .............................................. 7

16

*Canady v. Bridgecrest Acceptance Corp.,*
17
    No. 19-cv-04738, 2020 WL 5249263 (D. Ariz. Sept. 2, 2020) .........9, 10, 12, 14

18

*Carlton v. Mercantile Adjustment Bureau,*
    LLC, 2:15-cv-07124-ODW, 2016 WL 11518617 (C.D. Cal. Mar. 23,
19
    2016) ..................................................................................................9, 17

20

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S.E.P.A.,*
21
    630 F.Supp. 2d 295 (S.D.N.Y. 2009) ................................................... 16

22

*Clinton v. Jones,*
23
    520 U.S. 681 (1997) ............................................................................... 8

24

*CMAX, Inc. v. Hall,*
25
    300 F.2d 265 (9th Cir. 1962) ............................................................... 10

26

*Coulter v. Ascent Mortg. Res. Grp., LLC,*
27
    No. 2:16-cv-02237, 2017 WL 2219040 (E.D. Cal. May 18, 2017) .................. 15

28

i

*Dominguez v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018) ............................................................................ 6

*Duguid v. Facebook, Inc.*,
  926 F.3d 1146 (9th Cir. 2019) ......................................................................... 6

*Duguid v. Facebook, Inc.*,
  No. 15-cv-00985, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ...................... 6

*Duran v. Ocwen Mortg. Servicing, Inc.*,
  No. 17-905, 2017 WL 10526138 (C.D. Cal. Aug. 21, 2017) ............................. 8

*Duran v. La Boom Disco*,
  955 F.3d 687 (D.C. Cir. 2018) ......................................................................... 5

*Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. And Annuity Corp.*,
  No. 15-cv-04767, 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015) ..................... 17

*Errington v. Time Warner Cable Inc.*,
  No. 2:15-cv-02196, 2016 WL 2930696 (C.D. Cal. May 18, 2016) ................. 13

*Figueroa v. Carrington Mortg. Servs. LLC*,
  No. 8:15-cv-2414, 2106 WL 718289 (M.D. Fla. Feb. 22, 2016) ..................... 13

*Fontes v. Time Warner Cable, Inc.*,
  No. 2:14-cv-02060, 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) ............ 11, 15

*Gadelhak v. AT&T Servs., Inc.*,
  950 F.3d 458 (7th Cir. 2020) ........................................................................... 5

*Glasser v. Hilton Grand Vacations Co.*,
  948 F.3d 1301 (11th Cir. 2020) ....................................................................... 6

*Grome v. USAA Sav. Bank*,
  No. 4:19-cv-03080 (D. Neb. July 14, 2020) ................................................... 17

*Hoagland v. Axos Bank*,
  No. 19-cv-00750, 2020 U.S. Dist. (S.D. Cal. July 27, 2020) ........................... 7

*Hoffman v. Jelly Belly Candy Co., Inc.*,
  No. 2:19-cv-01935 (E.D. Cal. July 27, 2020) .................................................. 7

ii

*In re Portfolio Recovery Assocs.*,
   No. 1:1-md-02295, 2020 U.S. Dist. (S.D. Cal. July 27, 2020)

*Jensen v. RotoRooter Services Co.*,
   No. 2:20-cv-00223, W.D. Wash. August 20, 2020) ......................................... 11

*Kingdom of Sweden v. Melius*,
   No. 14-cv-04492, 2015 WL 7574463 (C.D. Cal. Nov. 25, 2015)..................... 10

*Kolloukian v. Uber Techs., Inc.*,
   No. 15-cv-2856, 2015 WL 9598782 (C.D. Cal. Dec. 14, 2015) ....................... 11

*Krejci v. Cavalry Portfolio Services*,
   No. 3:16-cv-0211, 2018 WL 3533246 (S.D. Cal. July 23, 2018) ...................... 11

*Lacy v. Comcast Cable Commc'ns, LLC*,
   No. 3:19-cv-05007, 2020 WL 2041755 (W.D. Wash. Apr. 28, 2020) ............. 12

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ..................................................................................... 8, 15

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ............................................................................ 8

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041, 1051 (9th Cir. 2018) .............................................................. 1, 5

*May v. Whatsapp, Inc.*,
   No. 4:20-cv-659 (N.D. Cal. July 15, 2020) ..................................................... 17

*McElrath v. Uber Tech., Inc.*,
   No. 16-cv-07241, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017)..................... 16

*Nakai v. Charter Commc'ns, Inc.*,
   No. 19-cv-8035, 2020 WL 1908949 (C.D. Cal. Apr. 15, 2020) ....................... 13

*Nguyen v. MarketSource, Inc.*,
   No. 17-cv-02063, 2018 U.S. Dist. (S.D. Cal. May 11, 2018) ........................... 12

*Nuccio v. Duve*,
   No. 7:13-cv-1556, 2015 WL 1189617 (N.D.N.Y. Mar. 16, 2015) ................... 16

iii

*Panacci v. Al Solar Power, Inc.,*
  No. 3:15-cv-00532, 2015 WL 3750112 (N.D. Cal. June 15, 2015) ..............3, 10

*Pinchem v. Regal Med. Grp., Inc.,*
  No. 2:15-cv-06518, 2017 WL 3449062 (C.D. Cal. Mar. 3, 2017).........1, 3, 9, 14

*Portfolio Recovery Assocs.,*
  No. 1:1-md-02295, 2020 U.S. Dist. (S.D. Cal. July 27, 2020) ..........................7

*Sensibaugh v. EF Educ. First, Inc.,*
  No. 2:20-cv-01068 (C.D. Cal. July 14, 2020) .................................................17

*Spiegel v. Associated Cmty. Servs., Inc.,*
  733 F. App'x 311 (7th Cir. 2018) ....................................................................10

*Spiegel v. Reynolds,*
  No. 1:15-cv-08504, 2017 WL 4535951 (N.D. III. Oct. 11, 2017) ....................9

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016).....................................................................................17

*Salvatore v. Microbilt Corp.,*
  No. 4:14-cv-1848, 2015 WL 5008856 (M.D. Pa. Aug. 20, 2015) ...................13

*Rossano v. Fashion Mktg. and Merch. Grp., Inc.,*
  No. 2:19-cv-10523 (C.D. Cal. July 14, 2020) .................................................17

*Royal Park Inv. SA/NV v. Deutshce Bank Nat'l Tr. Co.,*
  No. 17-cv-5916, 2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018) ......................15

*Runyon v. Everquote, Inc.,*
  No. 1:20-cv-01206 (D. Colo. July 23, 2020) ...................................................17

*Tovar v. Hospital Housekeeping Sys.,*
  No. 09-03487, 2009 WL 10672526 (C.D. Cal. Nov. 2, 2009)..........................12

*Veytia v. Portfolio Recovery Assoc.,*
  No. 20-cv-0341, 2020 WL 5257881 (S.D. Cal. Sept. 3, 2020) .........................9

*Washington v. Six Continents Hotels, Inc.,*
  No. 2:16-cv-03719-ODW, 2017 WL 111913  (C.D. Cal. Jan. 9,
  2017) ..............................................................................................2, 3, 9, 15, 17

iv

*Williams v. Nat'l Healthcare Review,*
No. 2:15-cv-0054, 2017 WL 4819097 (D. Nev. Oct. 25, 2017) ........................4

*Young v. Bank of Am. N.A.,*
No. 4:20-cv-659, (N.D. Cal. July 15, 2020) ......................................................17

**Statutes**

47 C.F.R. § 65.1200(c) .....................................................................................3, 9

47 U.S.C. § 227 ....................................................................................................5

47 U.S.C. § 227(a)(1) ...........................................................................................5

47 U.S.C. § 227(b)(3) .........................................................................................10

Cal. Pub. Util. Code § 2790 ............................................................................4, 10

Cal. Pub. Util. Code § 739.1(e) ...........................................................................4

Cal. Pub. Util. Code § 739.4(c) ...........................................................................4

# I.    **INTRODUCTION**

In this class action lawsuit, Plaintiff alleges two violations of the TCPA.  One claim concerns the TCPA's restriction on sending marketing messages to telephone numbers listed on the Federal Do-Not-Call ("DNC") Registry, and the other involves the TCPA's prohibition on sending texts with an automatic telephone dialing system ("ATDS") in certain circumstances.  Neither claim is likely to survive.  QCS's forthcoming summary judgment motion will establish that Plaintiff's DNC claim fails on its face, and Plaintiff's ATDS claim will in all likelihood be ended by the Supreme Court's decision in *Facebook Inc. v. Duguid*, Case No. 19-511 ("*Facebook*").

On the latter point, though it is uncertain what the Supreme Court will hold in *Facebook*, the textualist Supreme Court will likely adopt *this* Court's[1] previous interpretation of ATDS and follow the Third, Seventh, and Eleventh Circuits in ruling that the TCPA means what it says: for equipment to qualify as an ATDS, it must employ a random or sequential number generator.  In fact, the Department of Justice filed an amicus brief in the *Facebook* appeal (just this month) to explain that this is the result mandated by the plain text of the TCPA, and that any changes must come from Congress.  If the Supreme Court follows this approach, Plaintiff's putative ATDS class will be eliminated, and the scope of discovery will be entirely changed because the calling system at issue did not employ a random or sequential number generator.  QCS therefore respectfully moves this Court for an order staying Plaintiff's ATDS claim and all class discovery—but allowing individual (non-class)

---

[1] Before the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018)—which expressly rejected "a straightforward interpretation based on the plain language" in holding that any system that can simply "make calls from stored lists" qualifies as an ATDS—this Court explained that TCPA plaintiffs "**must show that [a defendant's] calling equipment had the 'capacity' to 'store or produce telephone numbers . . . using a random or sequential number generator.'**" *See Pinchem v. Regal Med. Grp., Inc.*, 2:15–cv–06518–ODW, 2017 WL 3449062, at *2 (C.D. Cal. Mar. 3, 2017) (Wright II, J.) (emphasis added).

discovery to proceed on Plaintiff's do-not-call ("DNC") claim—pending a ruling on its forthcoming summary judgment motion and the Supreme Court's decision in *Facebook*.

All of the relevant *Landis* factors favor a partial stay of this case. *First*, a stay would not harm Plaintiff, who does not seek actual damages, does not contend he suffers ongoing harm, and originally ***consented*** to a stay of the ATDS claim pending *Facebook* as further explained below. Rather, a partial stay would benefit Plaintiff because it would allow discovery on Plaintiff's individual DNC claim while preventing unnecessary time and expense litigating the ATDS claim and class discovery. *Second*, if this action is not stayed, QCS would be severely prejudiced by incurring significant and likely unnecessary costs. As noted in QCS's previous motion to stay, that factor is critically important here because the pandemic has severely impacted (and continues to impact) QCS's business, including by forcing it to lay off or furlough 95% of its employees. *Third*, a stay would promote judicial efficiency, as this Court previously determined in entering complete stays pending guidance on the meaning of ATDS from an intermediate appellate court (whereas here QCS is asking for a partial stay pending a dispositive decision from the Supreme Court). Without the benefit of a ruling in *Facebook*, the Court (and the parties) would have to evaluate a "critical issue of liability without knowing what law will ultimately apply at summary judgment or at trial—a fool's errand, to say the least." *See Washington v. Six Continents Hotels, Inc.*, No. 2:16-cv-03719-ODW, 2017 WL 111913, at *2 (C.D. Cal. Jan. 9, 2017) (Wright II, J.).

For these reasons and others discussed herein, QCS respectfully requests that the Court stay Plaintiff's ATDS claims and all class discovery pending the Supreme Court's decision in *Facebook* and QCS's forthcoming motion for summary judgment on Plaintiff's DNC claim.

## II.     RELEVANT LEGAL AND FACTUAL BACKGROUND

### A.   Plaintiff Sues Over Two Text Messages Offering Free Services that California Law Requires Be Offered to Low-Income Consumers.

On October 29, 2019, Plaintiff filed this putative class action, alleging that QCS sent two text messages to his 949-466-XXXX telephone number (the "Subject Number"). Doc. 1 at ¶¶ 22–24. The text messages offered "free weatherization services" for low-income customers on behalf Plaintiff's local utilities. *Id.* They were also directed at an individual named "Amanda Schwab." *Id.*

Plaintiff alleges two violations of the TCPA based on these messages. First, Plaintiff avers that QCS violated the TCPA's ATDS prohibition. *Id.* ¶¶ 34–39. Notably, if the system that sent the messages is not an ATDS, then Plaintiff's claim fails at the outset. *See Washington*, 2017 WL 111913, at *2 ("The TCPA imposes liability for text messages sent using an [ATDS]"); *Pinchem*, 2017 WL 3449062 at *2 (same). Second, Plaintiff alleges that QCS violated the TCPA's DNC restrictions, which apply only if the messages at issue are considering "marketing." *See* Doc. 1 ¶¶ 41-25; 47 C.F.R. § 65.1200(c); *Panacci v. A1 Solar Power, Inc.*, No. 3:15-cv-00532, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) ("National DNC Class members would not prevail if a court found that [defendant's] calls were not telephone solicitations [*i.e.*, marketing calls]."). On these bases, Plaintiff asks the Court to certify two nationwide TCPA classes and seeks millions of dollars in damages from QCS, a small company that had to shut down for months and lay off or furlough 95% of its employees during the COVID-19 pandemic. *Id.* ¶¶ 28–29; Doc. 31-2 ("Rago Decl.") at ¶ 10; Ex. A ("Suppl. Rago Decl.") at ¶ 10.

Worse, Plaintiff seeks millions of dollars in damages from QCS even though Amanda Schwab, the individual mentioned in the messages: (a) is Plaintiff's fiancée; (b) is the named subscriber of the Subject Number (*i.e.*, the cellular account for the Subject Number is in *her* name); and (c) provided the Subject Number to at least

3

Southwest Gas, a utility specifically referenced in the messages Plaintiff received. Doc 31-1 ("Watstein Decl.") at ¶¶ 4-6.  Plaintiff's Complaint omits these critical facts.

**B.**  **QCS's Forthcoming Summary Judgment Motion Will Show that Plaintiff's DNC Claim Is Meritless, Including Because the Messages Plaintiff Received Are Non-Marketing and Therefore Not Actionable.**

Plaintiff's Complaint also fails to mention that the text messages Plaintiff received are informational and were sent on behalf of utility companies in order to help them comply with their state-mandated obligation to: (a) provide free or discounted "weatherization" services to "low-income customers" who qualify; and (b) reach out to individuals in California to improve enrollment and participation in the low-income weatherization program.  *See* Cal. Pub. Util. Code § 2790 (providing that the Public Utility Commission "*shall* require an electrical or gas corporation to perform home weatherization services for low-income customers") (emphasis added); *see also* Cal. Pub. Util. Code § 739.1(e) (requiring improvement in low-income program "enrollment and participation"); Cal. Pub. Util. Code § 739.4(c) ("The commission *shall* conduct targeted outreach . . . to effectively target low-income and senior households throughout the state") (emphasis added); Rago Decl. at ¶¶ 5–9; Suppl. Rago Decl. at ¶¶ 4–5.  Indeed, the "free weatherization" services mentioned in the text messages are neither commercially available nor accessible to the public at large.  Rago Decl. at ¶ 9; Suppl. Rago Decl. at ¶ 5.  Rather, those services are *only* available to low-income customers who qualify. *See Williams v. Nat'l Healthcare Review*, No. 2:15-CV-0054-RFB-PAL, 2017 WL 4819097, at *7 (D. Nev. Oct. 25, 2017) (dismissing DNC claim on summary judgment because "the calls at issue here, seeking to encourage enrollment in a government program that provides free or heavily subsidized [services] does not constitute encouragement of a purchase, rental, or investment of a good, or service") (cits. and internal quotations omitted).

For this and other reasons, Plaintiff's DNC claim fails on its face.  QCS will therefore move for summary judgment before the Court rules on the instant Motion.

### C.   The Definition of ATDS Is Unsettled Nationwide.

Among other things, the TCPA prohibits calling a cellular telephone with an ATDS.  47 U.S.C. § 227.  An ATDS is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."  47 U.S.C. § 227(a)(1).  The FCC purported to interpret this statutory definition in various orders.  *ACA International v. Federal Communications Commission* ("*ACA*"), 885 F.3d 687, 693-94 (D.C. Cir. 2018) (summarizing FCC's treatment of ATDS in its various orders).  But in March 2018, the D.C. Circuit vacated the FCC's interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad.  *Id*. at 701.  This left a vacuum of authority and called into question pre-2018 cases addressing that issue, given that most of those cases were decided based on the now-vacated FCC guidance.

In that vacuum, courts across the country have reached inconsistent conclusions on what functionalities render a calling or messaging system an ATDS.  *See, e.g.*, *Duran v. La Boom Disco*, 955 F.3d 279, 281 n.5 (2nd Cir. 2020) (collecting circuit-level cases).  The Second, Ninth, and Sixth Circuits have adopted a broad interpretation, straying from the statutory definition to create their own, and concluding that a system that can simply "make calls from stored lists" qualifies as an ATDS.  *See id.* at 287; *Marks*, 904 F.3d at 1051 (expressly rejecting "a straightforward interpretation based on the plain language" of the TCPA); *see also Allan v. Penn. Higher Ed. Assis. Ag.*, --- F.3d ---, 2020 WL 4345341, at *9 (6th Cir. July 29, 2020).  The Third, Seventh, and Eleventh Circuits have held otherwise, adopting the statutory definition of ATDS, holding that equipment must employ a "random or sequential number generator" to qualify as an ATDS.  *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020) (rejecting *Marks*'s interpretations of

1  ATDS, which involved "a significant judicial rewrite" of the statute); *Glasser v.*
2  *Hilton Grand Vacations Co.*, 948 F.3d 1301, 1311-12 (11th Cir. 2020) (Ninth
3  Circuit's reading of the statute "looks more like surgery . . . than interpretation");
4  *Dominguez v. Yahoo, Inc*., 894 F.3d 116, 121 (3d Cir. 2018) ("key" question is
5  whether the equipment used "had the present capacity to function as an autodialer by
6  generating random or sequential telephone numbers and dialing those numbers").

7  **D.   The Supreme Court Will Imminently Define ATDS in Facebook.**

8        This uncertainty will soon end, as the Supreme Court is set to rule on what
9  constitutes an ATDS in *Facebook*.  In *Facebook*, the lower court granted the
10  defendant's motion to dismiss, holding that the plaintiff failed to meet his burden to
11  properly plead that he received text messages from a device with "the capacity to
12  store or produce telephone numbers to be called, using a random or sequential number
13  generator." *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at
14  *5-6 (N.D. Cal. Mar. 24, 2016).  In doing so, the lower court focused on the plaintiff's
15  allegations suggesting that "Facebook's login notification text messages [we]re
16  targeted to specific phone numbers and [we]re triggered by attempts to log in to
17  Facebook accounts associated with those phone numbers." *Id.* at *5.  The Ninth
18  Circuit reversed, holding that "an ATDS need not be able to use a random or
19  sequential generator to store numbers—it suffices to merely have the capacity to
20  'store numbers to be called' and 'to dial such numbers automatically.'" *Duguid v.*
21  *Facebook, Inc*., 926 F.3d 1146, 1151 (9th Cir. 2019) (reaffirming its decision in
22  *Marks* that a system sending messages to a list of stored numbers is an ATDS).  The
23  defendant then appealed to the Supreme Court to resolve the Circuit split over the
24  issue of whether "the definition of ATDS in the TCPA encompasses any device that
25  can 'store' and 'automatically dial' telephone numbers, even if the device does not
26  'us[e] a random or sequential number generator.'" *See* Question Presented Report,
27  No.   19-511,   *Facebook   v.   Duguid*,   https://www.supremecourt.gov/docket/
28

6

docketfiles/html/qp/19-00511qp.pdf (last visited Sept. 18, 2020) ("Question Presented Report").  Thus, in *Facebook*, the Supreme Court is set to review the proper definition of ATDS.  And it is set to do so in short order, as the case is part of the Supreme Court's October 2020 Term, Facebook already filed its opening brief,[2] and oral argument likely to be scheduled for the fall of 2020.  *See* Pet'r Br., Facebook, No. 19-511 (U.S. Sep. 4, 2020).

### E. The Parties' Conferral on a Stay Pending *Facebook*.

Before filing the instant motion, the parties conferred on QCS's request to stay Plaintiff's ATDS claim and class discovery pending *Facebook*.  *See* Ex. C ("Keilson Decl.").  During that conferral, counsel for QCS explained that a stay would benefit both parties, as litigating the meaning of ATDS before knowing that law would apply at summary judgment or trial made little sense.  *Id.* at ¶¶ 4–5.  Numerous TCPA plaintiffs have consented to stays across the country for this exact reason.[3]  QCS also explained that conducting class discovery on *any* claim was counterintuitive because: (a) Plaintiff would have to wait until the Court decides *Facebook* to move for class certification; (b) class discovery on Plaintiff's DNC claim is not proportional to the needs of the case because that claim fails at the outset, as will be made clear in QCS's forthcoming motion for summary judgment; and (c) class discovery would jeopardize the solvency of QCS—a small, family company that has already been significantly

---

[2] Additionally, several amicus curiae briefs have already been filed in support of Facebook, including one by the United States (a copy of which is attached hereto as "Exhibit B").

[3] *See, e.g.*, *Bittner v. Franchise World Headquarters LLC*, No. 3:20-cv-00522, Doc. 27 (Aug. 11, 2020); *Boger v. Citrix Systems, Inc.*, No. 8:19-cv-1234, Doc. 33 (D. Md. Aug. 4, 2020); *Blower v. Portfolio Recovery Associates, LLC*, No. 3:19-cv-2270, Dkt 24, (S.D. Cal. July 24, 2020); *Hoagland v. Axos Bank*, No. 19-cv-00750-BAS-DEB, 2020 U.S. Dist. LEXIS 132831 (S.D. Cal. July 27, 2020); *Hoffman v. Jelly Belly Candy Co., Inc.*, No. 2:19-cv-01935-JAM-DB, Doc. 22 (E.D. Cal. July 17, 2020; *In re Portfolio Recovery Assocs.*, No. 1:1-md-02295 JAH-BGS, 2020 U.S. Dist. LEXIS 132312 (S.D. Cal. July 27, 2020).

strained by the ongoing pandemic.  *See* Keilson Decl. at ¶ 5; Suppl. Rago Decl. at ¶ 10.

Plaintiff initially ***agreed*** to stay all aspects of his ATDS claim pending *Facebook*, as litigating that issue now does not make sense for either party, but refused to hold off conducting class discovery on his DNC claim—despite QCS's financial status and the threshold question of whether the messages at issue are marketing and, thus, whether his DNC claim is even viable.  Keilson Decl. at ¶¶ 5–6.

Because QCS was unwilling to agree to a compromise that would needlessly and pointlessly increase the expense and burden to it and the Court, or expose low-income utility customers in California to intrusive class discovery that will invade their privacy, QCS now moves the Court to stay Plaintiff's ATDS claim and all class discovery pending *Facebook*.

## III.   <u>ARGUMENT</u>

### A.   Legal Standard on Motion to Stay.

Courts have "broad discretion to stay proceedings as an incident to [their] power to control [their] own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *accord Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  In determining whether to grant a *Landis* stay, courts within this Circuit consider three factors: (1) harm the non-moving party may suffer as a result of a stay; (2) hardship the moving party may suffer if a stay is denied; and (3) "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected from a stay" (*i.e.*, judicial economy).  *See*, *e.g.*, *Lockyer*, 398 F.3d at 1109; *Duran v. Ocwen Mortg. Servicing, Inc.*, No. 17-905, 2017 WL 10526138, at *2 (C.D. Cal. Aug. 21, 2017) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Applying the "*Landis*" factors, courts within this Circuit and outside it routinely stay proceedings when a higher court is close to settling an important issue

of law bearing on the action—as this Court has done on several occasions pending decisions on the meaning of ATDS from an intermediate appellate court. *See, e.g.*, *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738, 2020 WL 5249263, at *3-4 (D. Ariz. Sept. 3, 2020) (staying case based on *Facebook*); *Veytia v. Portfolio Recovery Assoc.*, No. 20-CV-0341, 2020 WL 5257881, at *2-4 (S.D. Cal. Sept. 3, 2020) (same); *Pinchem*, 2017 WL 3449062, at *2 (Wright II, J.) (staying TCPA case pending a decision from the D.C. Circuit regarding the definition of ATDS); *Washington*, 2017 WL 111913, at *2 (same); *Carlton v. Mercantile Adjustment Bureau*, LLC, 2:15-cv-07124-ODW, 2016 WL 11518617, at *4 (C.D. Cal. Mar. 23, 2016) (Wright II, J.) (staying TCPA case pending decisions from the D.C. Circuit and the Supreme Court).

### B.    All Relevant Considerations Favor Granting a Partial Stay.

All of the relevant factors identified above weigh in favor of staying Plaintiff's ATDS claim and class discovery.

#### 1.  A Stay Poses No Risk of Damage or Harm to Plaintiff.

First, a partial stay pending *Facebook* poses no harm to Plaintiff.  As a threshold matter, Plaintiff's case will not sit idly on the Court's docket while the Supreme Court considers *Facebook*.  Rather, if the Court grants QCS's Motion, Plaintiff can litigate whether his individual DNC claim has merit and, thus, whether he can represent that class before conducting potentially unnecessary class discovery. Notably, as QCS's forthcoming summary judgment will make clear, class discovery on that claim will be unnecessary because Plaintiff' DNC claim fails for several reasons.  Just by way of one example, the TCPA's DNC restrictions apply only to *marketing* messages, and Plaintiff received purely *informational* messages that referenced free weatherization services pursuant to Section 2790 of the California Public Utilities Code.  *See* 47 C.F.R. § 65.1200(c); *Spiegel v. Reynolds*, No. 1:15-cv-08504, 2017 WL 4535951, at *, 3 (N.D. Ill. Oct. 11, 2017), *aff'd sub nom. Spiegel v.*

*Associated Cmty. Servs., Inc.*, 733 F. App'x 311 (7th Cir. 2018) (granting summary judgment in favor of defendant on DNC claim because "the calls at issue did not constitute 'telephone solicitation' under the TCPA"); *Panacci ,* 2015 WL 3750112, at *8 ("National DNC Class members would not prevail if a court found that [defendant's] calls were not telephone solicitations."); *see also* Cal. Pub. Util. Code § 2790 (Public Utility Commission "shall require an electrical or gas corporation to perform home weatherization series for low-income customers"); Rago. Decl. at ¶¶ 4–9; Suppl. Rago Decl. at ¶ 5 ("**QCS does not have (and has never had) the ability to even collect payment directly from consumers**.") (emphasis added).

But even if QCS requested a complete stay of this case pending *Facebook* and a decision on its forthcoming summary judgment motion, Plaintiff still would not suffer any harm.  Indeed, courts have stayed cases pending *Facebook* even though they involved separate claims that would be unaffected by the decision.  *See, e.g.*, *Canady*, 2020 WL 5249263, at *4 ("It's true that [plaintiff's] sole claim is premised on both ATDS issues and prerecorded-voice-message issues, the latter of which will be unaffected by the outcome of Facebook. [ ] **But the fact that 'a [pending] decision . . . may not settle every question of fact and law in [a] suit[ ] . . . , but in all likelihood . . . will settle many and simplify them all' weighs in favor of granting a stay."**) (cits. omitted and emphasis added).  Further, there is no harm to Plaintiff merely because the stay may delay his recovery of money damages.  *See*, *e.g.*, *CMAX*, 300 F.2d at 268-69 (non-moving party did not make "strong showing in support of its assertion that it will suffer irreparable damages and a miscarriage of justice" where delay in trial would only delay recovery of monetary damages); *Kingdom of Sweden v. Melius*, No. 14-cv-04492, 2015 WL 7574463, at *3 (C.D. Cal. Nov. 25, 2015) (no prejudice to plaintiff where stay delays recovery of damages). And that fact is relevant here because Plaintiff does not even request actual damages, only statutory damages.  *See* 47 U.S.C. § 227(b)(3) ($500 for negligent violation; up

10

to $1,500 for willful violation); *see* Compl. ¶¶ 39, 45 (seeking statutory damages). Nor could he, because the messages at issue actually benefited him by making him aware of *free* services he was eligible for under a state program and that would make his home safer, more comfortable, and cheaper to power.

The same is true for Plaintiff's passing, conclusory requests to generally enjoin violations of the TCPA. *See Krejci v. Cavalry Portfolio Services*, No. 3:16-cv-0211, 2018 WL 3533246, at *2 (S.D. Cal. July 23, 2018) (granting stay in TCPA case, in part, because plaintiff's claim of ongoing harm "is too conclusory in nature to be persuasive absent more detail or factual support"). Plaintiff does not claim he received additional texts messages beyond those mentioned in the Complaint, the last of which occurred **over a year ago**. *See* Doc. 1 at ¶ 23; *see also, e.g.*, *Jensen v. Roto-Rooter Services Co.*, No. 2:20-cv-00223-JCC, Doc. 27 (W. D. Wash. August 20, 2020) (staying case pending *Facebook*, explaining plaintiff "has not has not shown that she has actually suffered, or will suffer, harm [from a stay because she] does not allege that she or other class members have received unauthorized text messages from Defendant since January 2020 . . . [a]nd a delay in a final judgment is not sufficient to warrant denial of a motion to stay") (attached as Ex. D). Thus, Plaintiff will not suffer any legally cognizable harm if the Court grants a partial stay.

Instead, if anything, Plaintiff would be harmed if the Court does ***not*** enter a stay because he could incur significant trouble and expense in discovery only to later find out that his ATDS claim is barred or that ATDS now means something entirely different. *See*, *e.g.*, *Fontes v. Time Warner Cable, Inc.*, No. 2:14-cv-02060, 2015 WL 9272790, at *5 (C.D. Cal. Dec. 17, 2015) (stay of TCPA putative class action did not harm plaintiffs; rather, a "stay could save substantial efforts by the parties"); *Kolloukian v. Uber Techs., Inc.*, No. 15-cv-2856, 2015 WL 9598782, at *1 (C.D. Cal. Dec. 14, 2015) (stay of TCPA action pending D.C. Circuit decision would "reduc[e] the burden on the parties").

The posture of this action also weighs against a finding of prejudice, as the case is in its early stages, no trial date is set, and the expense of discovery is only just beginning. *See*, *e.g.*, *Tovar v. Hospital Housekeeping Sys.*, No. 09-03487, 2009 WL 10672526, at *4 (C.D. Cal. Nov. 2, 2009) (early procedural posture of a case "weighs against a finding of prejudice"). Nor is timeliness of the *Facebook* decision a concern. The Supreme Court granted certiorari in *Duguid* on July 9, 2020 and is likely to set a date for oral argument in the fall of 2020. *See Nguyen v. MarketSource, Inc.*, No. 17-cv-02063-AJB-JLB, 2018 U.S. Dist. LEXIS 80226, at *17 (S.D. Cal. May 11, 2018) (staying proceedings pending resolution of a Supreme Court case where a decision was anticipated "sometime [that] year," finding that "a stay to accommodate that decision would not be open-ended and will likely be relatively short") (quotation and cit. omitted). Thus, the stay would not be lengthy or indefinite in nature. *See*, *e.g.*, *Canady*, 2020 WL 5249263, at *3 ("[T]he requested stay wouldn't be impermissibly 'indefinite in nature.'[ ] Instead, a stay would only last until the Supreme Court issues a decision, which is a permissible end point.") (internal cits. omitted). The first factor therefore supports staying Plaintiff's ATDS claim and class discovery.

## 2. QCS Will Suffer Hardship and Inequity If the Court Does Not Enter a Partial Stay.

The second factor—whether the moving party will likely suffer hardship or inequity if the Court does not grant the stay—also supports staying Plaintiff's ATDS claim and all class discovery. If the case is not partially stayed pending a decision in *Facebook* and on QCS's forthcoming summary judgment motion, QCS will have to invest substantial resources litigating the central dispute in this nationwide putative class action, despite the possibility that the Supreme Court will render that investment unnecessary. *See*, *e.g.*, *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying case pending

Supreme Court's First Amendment TCPA decision to prevent the defendant from "needlessly spending time and money to comply with [] broad discovery requests"); *Nakai v. Charter Commc'ns, Inc*., No. 19-CV-8035-GW-SSX, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) (staying case pending Supreme Court's TCPA decision because the defendant would otherwise "be required to spend additional resources defending against this putative nationwide class action that may ultimately be rendered moot by the decision"); *Errington v. Time Warner Cable Inc*., No. 2:15-cv-02196, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016) (granting stay of TCPA case pending resolution of D.C. Circuit decision and noting that "[i]f the case is not stayed, Defendant may suffer hardship in conducting discovery and trial preparation").[4]   QCS's concern is not merely hypothetical.   Plaintiff has already served QCS with overbroad discovery seeking class data for the past four years regarding every conceivable communication by every employee and affiliated entity of QCS, as well personal data regarding every individual who qualified to receive free weatherization services.  *See* Ex. E.  This will result in significant expense and discovery disputes that the Court will have to police.

Such discovery would also be immensely prejudicial for QCS, given it had to shutter operations for *months* due to the COVID-19 pandemic and thus has minimal revenue to pay the employees it has left, much less to litigate a class action lawsuit—particularly one that involves a claim that fails out of the gate and another claim that will likely be gutted by the Supreme Court.  *See* Rago. Decl. at ¶ 10; Suppl. Rago

---

[4] *See also e.g.*, *Figueroa v. Carrington Mortg. Servs. LLC*, No. 8:15-CV-2414-T-24TGW, 2016 WL 718289, at *3 (M.D. Fla. Feb. 22, 2016) (staying TCPA case pending Supreme Court's decision in part to save "the parties from unnecessary discovery expenses"); *Salvatore v. Microbilt Corp*., 4:14-cv-1848, 2015 WL 5008856, at *2 (M.D. Pa. Aug. 20, 2015) (staying TCPA pending Supreme Court decision because "the parties face potential hardship if the stay were denied and the parties were required to expend time and resources engaging in fact and expert discovery" while the decision remains pending).

Decl. at ¶ 10.  Put simply, Plaintiff wants to exact a company-ending judgment from QCS (if only by pursuing class discovery against a defendant who cannot afford it) under an interpretation this Court previously **rejected**, and which could no longer be the law of this Circuit in a matter of months because the Supreme Court is likely to agree with this Court's prior interpretation of ATDS in *Facebook*. *See Pinchem*, 2017 WL 3449062, at *2 (TCPA plaintiff **"must show that [a defendant's] calling equipment had the 'capacity' to 'store or produce telephone numbers . . . using a random or sequential number generator.'"**) (emphasis added).   For these reasons, proceeding with this case prior to a decision in *Facebook* makes little sense and would substantially and unnecessarily prejudice QCS.  The second factor therefore supports a stay as well.

### 3.  A Stay Will Promote Judicial Efficiency and Preserve Judicial Resources.

The third factor—judicial economy—also militates in favor of a stay.  This is especially true because the Supreme Court's decision in *Facebook* may be dispositive of Plaintiff's ATDS claim and this case is a putative class action that will involve significant discovery and motion practice regarding the merits and class certification, all of which the Court will have to police and decide.  *See, e.g.*, *Canady*, 2020 WL 5249263, at *4 ("Waiting for a decision to issue in *Facebook* will avoid exhausting judicial resources to decide things like motions to dismiss, motions for class certification, and any possible discovery-related matters or summary judgment motions to follow which may prove fruitless.") (internal cits. and formatting omitted, and emphasis added); *Boger v. Citrix Sys.*, *Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (stay pending Supreme Court's First Amendment TCPA decision to "conserve[] precious judicial and case resources and avoid[] unnecessary expenditure of time and money on discovery for a cause of action that may ultimately be invalidated").  Indeed, this Court applied similar logic in

staying a TCPA case pending a decision on the meaning of ATDS from an intermediate appellate court.  *Washington*, 2017 WL 111913, at *2 (Wright II, J.) (finding this factor supports staying a TCPA case because the "D.C. Circuit's ruling will therefore be determinative of the law that this Court must apply to this issue").

Further, allowing the Supreme Court to decide *Facebook* before proceeding in this case would promote judicial efficiency and ensure a uniform, national interpretation of the TCPA and QCS's defenses.  *Canady*, 2020 WL 5249263, at *4 ("A stay avoids costly and potentially duplicative discovery and avoids satellite ligation over what should and shouldn't wait until after *Facebook* is decided."); *Coulter v. Ascent Mortg. Res. Grp., LLC*, No. 2:16-cv-02237, 2017 WL 2219040, at *4 (E.D. Cal. May 18, 2017) (stay warranted in TCPA class action pending forthcoming D.C. Circuit opinion as a "stay will conserve judicial resources, clarify the law, and aid the court in making a decision"); *Fontes*, 2015 WL 9272790, at *5 (stay warranted in TCPA class action pending forthcoming D.C. Circuit opinion which may resolve a dispositive issue and could "avoid the risk of wasting the resources of the Court").

In short, incurring the significant costs of class and expert discovery before the law is settled is inequitable and will waste the resources of the parties and Court.

**4.  A Stay Will Further the Interests of the Public and Non-Parties, Including by Preventing Invasive Discovery Implicating Low-Income Individuals Who Received Free Weatherization Services.**

While it has not been expressly identified as a *Landis* factor in by the Ninth Circuit, a partial stay would also promote the public interest because the efficient, fair, and uniform administration of the judicial system serves that interest.  *See Royal Park Inv. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17-CV-5916-AJN, 2018 WL 3849840, at *3 (S.D.N.Y. Aug. 10, 2018) (staying action pending resolution of related case because "the public is also not served by any wasting of judicial resources");

*Nuccio v. Duve*, No. 7:13-CV-1556-MAD-TWD, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action [pending the outcome of a district court action involving similar issues] will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources").  Further, a stay would promote the interests of non-parties by preventing discovery that would unnecessarily burden them and invade their privacy.  For example, Plaintiff's class discovery requests ask QCS to provide detailed information about individuals who qualified to receive free weatherization services—ignoring that those individuals surely do not want to be identified as "low-income," particularly for a class action that involve a meritless DNC claim and an ATDS claim that will almost certainly be rendered moot by *Facebook*.  *See generally* Ex. E.  Rather than put the cart before the horse by allowing Plaintiff to push forward with class discovery, it makes far more sense to partially stay this case and likely avoid the immense (and potentially unnecessary) burden Plaintiff's class action will have on third-parties.[5]

By "conserving judicial resources, a stay will serve not only the interest of the courts, but also the interests of the [p]arties, the nonparties, and the public in 'an orderly and efficient use of judicial resources.'"  *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 306 (S.D.N.Y. 2009).  Therefore, the balance of the equities strongly favors granting this motion and staying this action.

### 5.  Courts Routinely Grant Stays Where Supreme Court Decisions May Impact the Case.

Applying these factors, courts within the Ninth Circuit and elsewhere routinely stay proceedings when a higher court is close to settling an important issue of law bearing on the action.  *See*, *e.g.*, *McElrath v. Uber Tech., Inc*., No. 16-cv-07241, 2017

---

[5] If forced to proceed with class discovery, QCS would have no choice but to depose putative class members to show that class certification is improper, further burdening non-parties (and non-parties likely want to avoid appearing for a deposition in the middle of a pandemic).

WL 1175591, at *5-7 (N.D. Cal. Mar. 30, 2017) (staying action pending Supreme Court decision in another case that "will significantly impact the instant case"); *Eric B. Fromer Chiropractic, Inc*, 2015 WL 6579779, at *2 (collecting cases from district courts of California, Florida, and Virginia staying TCPA cases pending *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

In fact, courts often stay even individual (non-class) cases where an intermediate appellate court will provide ***guidance*** on an issue that would not necessarily be dispositive, such as when this Court routinely stayed TCPA cases based on the D.C. Circuit's then-forthcoming decision on the proper definition of an ATDS. *See, e.g.*, *Washington*, 2017 WL 111913, at *2 (Wright II, J.) (staying TCPA case pending a decision from the D.C. Circuit regarding the definition of ATDS); *Carlton*, 2016 WL 11518617, at *4 (Wright II, J.) (staying TCPA case pending decisions from the D.C. Circuit and the Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

A stay is even more warranted in this putative TCPA class action, where QCS has offered to proceed with individual discovery on Plaintiff's DNC claim and a ***Supreme Court*** decision will address the material dispute between the Parties: the proper definition of ATDS. That is one of the many reasons courts across the country have stayed cases pending a decision in *Facebook*. *See supra* n. 3; *see also Canady*, 2020 WL 5249263, at *4; *Runyon v. Everquote, Inc.*, 1:20-cv-01206, Doc. 20 (D. Colo. July 23, 2020) (staying case based on *Facebook*); *Beal v. Outfield Brew House, LLC*, No. 20-1961, Dkt Entry July 14, 2020 (8th Cir. July 14, 2020) (same); *Grome v. USAA Sav.* Bank, No. 4:19-cv-03080 (D. Neb. July 14, 2020) (same); *Young v. Bank of Am. N.A.*, No. 4:19-CV-03867, Doc. 31 (N.D. Cal., July 15, 2020) (same); *May v. Whatsapp, Inc.*, No. 4:20-CV-659, Doc. 20 (N.D. Cal. July 15, 2020) (same); *Rossano v. Fashion Mktg. and Merch. Grp., Inc.,* No. 2:19-CV-10523, Doc. 31 (C.D. Cal. July 14, 2020) (same); *Sensibaugh v. EF Educ. First, Inc.*, No. 2:20-CV-01068,

Doc. 30 (C.D. Cal. July 14, 2020) (same).

This Court should follow suit and partially stay this action pending a decision in *Facebook* and on QCS's forthcoming summary judgment motion.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, QCS respectfully requests this Court stay Plaintiff's ATDS claim and all class discovery—but allow individual (non-class) discovery to proceed on Plaintiff's DNC claim—pending a ruling on its forthcoming summary judgment motion and the Supreme Court's decision in *Facebook*.

Dated:  September 19, 2020                    KABAT CHAPMAN & OZMER LLP

By: <u>/s/ *Ryan D. Watstein*</u>

Ryan D. Watstein

*Counsel for Defendant*

## PROOF OF SERVICE

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

I am employed in Los Angeles, California; I am over the age of 18 and not a party to the within action; my business address is 333 S. Grand Avenue, Suite 2225, Los Angeles, CA 90071.

On September 19, 2020, I served the foregoing document(s) described as **DEFENDANT'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES (inclusive of proposed order)** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

☐ **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, CA. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on September 19, 2020, at Los Angeles, CA.

By: /s/ Ryan D. Watstein

_____
Ryan D. Watstein

**SERVICE LIST**

Steven L. Woodrow
Patrick H. Peluso
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
swoodrow@woodrowpeluso.com
ppeluso@woodrowpeluso.com

Afshin Siman
Law Office of Afshin Siman
6210 Wilshire Blvd., Ste. 211
Los Angeles, CA 90048
siman@simanlawfirm.com