AFSHIN SIMAN
LAW OFFICE OF AFSHIN SIMAN
6210 Wilshire Blvd., Suite 211
Los Angeles, CA 90048
(424) 229-9778
siman@simanlawfirm.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Pro Hac Vice

Attorneys for Plaintiff and the Putative Class

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL TRUJILLO**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**FREE ENERGY SAVINGS COMPANY, d/b/a QUALITY CONSERVATION SERVICES**, a Delaware limited liability company,<br><br>Defendant. | Case No. 5:19-cv-02072-ODW-SP<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY STAY PROCEEDINGS**<br><br>Date: November 2, 2020<br>Time: 1:30 PM<br>Judge: Hon. Otis D. Wright II<br>Place: Courtroom 5D<br><br>Complaint Filed: October 29, 2019 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

I.     INTRODUCTION ...............................................................................1

II.    BACKGROUND .................................................................................2

III.   ARGUMENT .......................................................................................4

     A.   Even If Favorable To QCS's Position, The Ruling In *Duguid* Will
        Not Dispose Of Plaintiff's ATDS Claim ...........................................4

     B.   The *Landis* Factors Do Not Support Granting A Stay. ...................8

          1.   Plaintiff will suffer harm in the form of stale and unavailable
              evidence if a stay is granted ......................................................9

          2.   The only "hardship" that QCS would face in moving
              forward is the natural consequences of litigation ...............12

          3.   Considerations of judicial economy support denying the
              request for a stay.....................................................................14

          4.   Defendant's additional considerations do not move the
              needle.......................................................................................15

     C.   Defendant Has Provided No Credible Justification For Staying
        Discovery On Trujillo's DNC Claim ...............................................17

IV.    CONCLUSION .................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Abante Rooter and Plumbing, Inc. v. Nationwide Mut. Ins. Co.*,
      No. 17-cv-03328-EMC, 2018 WL 573576 (N.D. Cal. Jan. 26, 2018) ...... 7, 12

*Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631,
      140 S. Ct. 2335 (July 6, 2020) .................................................................. 4–5

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
      490 F.3d 718 (9th Cir.2007) ........................................................................ 10

*Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738,
      2020 WL 5249263 (D. Ariz. Sept. 3, 2020) .................................................. 11

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ......................................... 9, 11

*Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) ................................ 5–6

*Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020) ................................. 1, 6

*Gessele v. Jack in the Box, Inc.*, No. C10–0960,
      2012 WL 3686274 (D. Or. Aug. 24, 2012) .................................................. 18

*Gomez v. Rossi Concrete, Inc.*, No. C08–1442,
      2011 WL 666888 (S.D. Cal. Feb.17, 2011) ................................................. 18

*Knapper v. Cox Commc'ns, Inc.*, No. CV-17-00913-PHX-SPL,
      2019 WL 250430 (D. Ariz. Jan. 17, 2019) ..................................................... 5

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) .............................. 8–9, 11, 17

*Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO,
      2018 WL 6459964 (E.D. Cal. Dec. 10, 2018) ................................................ 5

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ................................. 9, 13

*Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM),
      2019 WL 4382204 (S.D.N.Y. Aug. 19, 2019) ................................................ 5

*Whittaker v. All Reverse Mortgage Inc.*,

    No. CV-20-08016-PCT-DLR (D. Ariz. July 17, 2020) ..................................7

*Youngbloods v. BMG Music*, No. 07 Civ. 2394(GBD)(KNF),

    2011 WL 43510 (S.D.N.Y. Jan. 6, 2011).......................................................14


**STATUTES, RULES, AND OTHER SOURCES**

FED. R. CIV. P. 30..................................................................................................16

FED. R. CIV. P. 56..................................................................................................18

*Supreme Court Procedures*, UNITED STATES COURTS,

    https://www.uscourts.gov/about-federal-courts/educational-resources/about-

    educational-outreach/activity-resources/supreme-1......................................10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Defendant Free Energy Savings Company, d/b/a Quality Conservation Services ("Defendant" or "QCS") violated the Telephone Consumer Protection Act ("TCPA") by sending unsolicited, autodialed text messages to consumer cell phones without prior express written consent. Instead of taking responsibility for its actions, QCS asks for a second time that the Court stay this matter. In its Motion, Defendant requests a stay of Plaintiff's automatic telephone dialing system ("ATDS") claim and "all class discovery"—including discovery related to Plaintiff's separate "do not call" ("DNC") claim—pending the Supreme Court's resolution of *Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020). The *Duguid* case concerns the definition of an ATDS and, specifically, whether a dialing system that does not use a random number generator may be classified as an ATDS. Defendant's arguments to stay various portions of this case fail, and the Court should deny QCS's motion.

QCS's assessment of the *Duguid* decision is flawed. To hear Defendant tell it, Plaintiff's claim related to autodialed text messages would "in all likelihood be ended" and "be eliminated" by a decision in *Duguid* favorable to QCS's position. (Mot. to Stay, dkt. 40, at 1.) Such a doomsday prediction completely overlooks the fact that, regardless of any change that the Supreme Court may make to the definition of an ATDS, the true nature of QCS's dialing equipment must be proven through discovery. Plaintiff has alleged that Defendant's system used a random number generator, which would fit the definition of an ATDS no matter which way the Supreme Court rules; QCS may claim that its system does not possess such capability, but Plaintiff will not simply take Defendant's word for it—that is a genuine factual dispute that must be resolved with discovery. Rather than sit idly by

for months and months while evidence becomes more distant and difficult to obtain, the parties should proceed with the discovery and proceedings that will be required regardless of the *Duguid* decision.

Additionally, the *Landis* factors for granting a stay do not favor QCS's request. Plaintiff and the Class members face a real risk of harm if all discovery is stayed pending a decision in *Duguid*, while QCS's supposed hardship depends on the Supreme Court disposing of Plaintiff's claim—which will not happen. Judicial economy will not be served by postponing discovery and forcing this matter to languish on the Court's docket.

Finally, Defendant does not make a credible argument for staying class discovery of Plaintiff's DNC claim, aside from stating that QCS intends to file a motion for summary judgment on that claim. (*See* Dkt. 40 at 1–2.) Defendant is permitted to file a motion for summary judgment whenever it sees fit, but to stay class discovery in order to give QCS a free shot at defeating the claim is inefficient and legally unsupported.

Accordingly, Defendant's Motion to Stay should be denied in its entirety.

## II.   BACKGROUND

Trujillo alleges that QCS violated the TCPA by sending unsolicited, autodialed text messages to his cellphone and to the cellphones of many other consumers, all of whom never provided prior express written consent to receive such calls. (*See* Compl., dkt. 1 at ¶¶ 6, 27.) Trujillo seeks certification of two classes, each rooted in a different cause of action—the first class and cause of action are based on Defendant's violation of the TCPA's prohibition of the use of an ATDS without prior express consent. (*Id.* ¶¶ 28, 34–39.) In support of this cause of action, Plaintiff has alleged that QCS's dialing software has the capacity to store or produce phone numbers to be called, "using a random or sequential number

generator." (*Id.* ¶ 17.)  The second class is based on QCS's transmission of unsolicited text messages to consumers who registered their cellphone numbers on the National Do Not Call registry. (*Id.* ¶¶ 28, 40–45.)

Prior to the filing of the present motion, counsel for QCS conferred with counsel for Plaintiff regarding a stay of the case. (Declaration of Patrick H. Peluso, attached hereto as Exhibit A, at ¶ 3.) In an effort to compromise, counsel for Plaintiff indicated that he would agree to consent to a partial stay only of the ATDS claim, not the DNC claim—such was the condition of consent to a stay, that Plaintiff's DNC claim would be pursued uninterrupted. (*Id.* ¶ 4.) Shortly thereafter, counsel for QCS drafted a stipulation that included a stay of any class discovery or proceedings related to Plaintiff's DNC claim, and counsel for Plaintiff returned the draft and indicated that such a stay was not part of the agreement reached in conferral. (*Id.* ¶¶ 5–6.) Shortly thereafter, Defendant filed its Motion, attempting to stay the ATDS claim and all class discovery, including on Plaintiff's DNC claim. (*Id.* ¶ 7; Dkt. 40 at 1–2.)

As was the case in its previous Motion to Stay (*see* dkt. 31), Defendant's motion includes a number of prefatory arguments related to its view of the case facts, including assertions that Plaintiff's wife supposedly provided Plaintiff's phone number and that the messages at issue were simply "informational" rather than telemarketing. (Dkt. 40 at 3–5.) Though characterized as part of the "relevant factual background," these arguments serve merely as a preview of QCS's supposedly forthcoming motion for summary judgment. Defendant's untested merits arguments are not relevant or germane to the present Motion to Partially Stay, and they should be left for consideration as part of a different, appropriate motion.

## III.   ARGUMENT

The requested partial stay should be denied. QCS's insistence that a decision in the *Duguid* case would "eliminate" Plaintiff's ATDS claim is simply incorrect—Trujillo's allegations will align with the autodialer definition regardless of how the Supreme Court rules. As a result, the *Landis* factors do not favor staying inevitable discovery and risking harm to Plaintiff's ability to pursue relief for himself and the class members. Further, Defendant has provided no basis for staying class discovery on the DNC claim, and doing so would be inefficient. As explained in detail below, the Court should deny QCS's motion in its entirety.

### A.   Even If Favorable To QCS's Position, The Ruling In *Duguid* Will Not Dispose Of Plaintiff's ATDS Claim.

Just like its previous motion to stay, Defendant's motion to partially stay this matter is premised on the belief that an upcoming Supreme Court decision will shift the landscape of TCPA litigation in such a way that "Plaintiff's putative ATDS class will be eliminated." (Dkt. 40 at 1.) QCS's first motion was rendered moot by a Supreme Court ruling that, unsurprisingly, did not completely upend the TCPA. (*See* Dkt. 39.) Here, the limited issue before the Court in *Duguid* poses even less of a risk of disrupting Plaintiff's claims and this matter—Trujillo's ATDS allegations will align with the statutory definition even if the Supreme Court employs a strict interpretation, and, in any case, Plaintiff will require discovery to determine whether QCS's dialing system meets the applicable definition. Regardless of the decision in *Duguid*, Plaintiff's ATDS claim will not be eliminated.

For many months prior to July, it was standard practice in TCPA litigation for defendants to request stays pending the Supreme Court's decision in *Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631, 140 S. Ct. 2335 (July 6, 2020)

("*AAPC*"). Indeed, that was the basis for QCS's first motion to stay, filed on April 10, 2020. (Dkt. 31.) *AAPC* involved a constitutional challenge to an amendment to the TCPA's autodialer ban, which created an exemption for automated calls made to collect on government-backed debts. *AAPC*, 140 S. Ct. at 2343. In theory, and as argued by QCS, the Court could have stricken the entire autodialer ban as unconstitutional due to the content-based exception. However, the Supreme Court applied the traditional remedy of severance and struck only the government-debt exemption as unconstitutional. *Id.* at 2353–54. Nevertheless, and despite how unlikely a complete dismantling of TCPA may have been, the uncertain fate of the autodialer ban itself convinced numerous courts to stay proceedings before them pending the *AAPC* ruling.

The practice of seeking stays in TCPA matters long precedes the *AAPC* decision. Defendants sought stays awaiting the FTC's 2015 TCPA Order—claiming it would settle the issue of what constitutes an ATDS—and then sought stays when the FTC's 2015 TCPA Order was appealed to the D.C. Circuit (again claiming that the issue would be resolved once and for all). *See, e.g.*, *Knapper v. Cox Commc'ns, Inc.*, No. CV-17-00913-PHX-SPL, 2019 WL 250430 (D. Ariz. Jan. 17, 2019); *Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO, 2018 WL 6459964 (E.D. Cal. Dec. 10, 2018). Yet, after the D.C. Circuit ruled, Defendants even began seeking stays pending a new order from the FTC. *See*, *e.g.*, *Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM), 2019 WL 4382204, at *8 (S.D.N.Y. Aug. 19, 2019).

Now that *AAPC* has been decided, QCS points to a different TCPA appeal in seeking to stay these proceedings: *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). After the district court dismissed Duguid's complaint for failing to adequately alleged the use of an ATDS, the Ninth Circuit reversed and held that an

ATDS could be found where the dialing technology is capable of storing numbers to be called and dialing such numbers automatically. *Id.* at 1149–51. The Court rejected the notion that an ATDS *must* use a random or sequential number generator to store numbers. *Id.* The U.S. Supreme Court granted certiorari on July 9, 2020, for review of the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'

Petitioner's Brief in *Facebook, Inc. v. Duguid, et al.*, Case No. 19-511, 2019 WL 5390116, at *ii (S. Ct. Oct. 17, 2019).

The Supreme Court's analysis centers on the question of whether a dialing system that does not use a "random or sequential number generator" may be considered an ATDS as defined by the statute. While the *Duguid* decision could certainly impact TCPA litigation and the definition of an autodialer, it will not dispose of Plaintiff's claims or the need to demonstrate the use of an ATDS. Here, Plaintiff alleged in his complaint that Defendant used an ATDS that featured "a random or sequential number generator." (Dkt. 1 at ¶ 17.) If the Supreme Court upholds the *Duguid* decision, Plaintiff would no longer need evidence of a random number generator to prove that Defendant's system qualifies as an ATDS. Conversely, if the Court reverses the Ninth Circuit's decision, such evidence will be required. Of course, regardless of the ruling in *Duguid*, Plaintiff will need to obtain evidence through discovery to determine the nature of the dialer that was actually used to send the text messages to himself and the other members of the class—such evidence is in QCS's possession, and it will be necessary to this case no matter what the Supreme Court decides.

Defendant predicts that the Supreme Court will reverse *Duguid* and hold that a random number generator is required. (Dkt. 1.) But attempting to divine the intentions of the Supreme Court is of little use here because Plaintiff's allegations satisfy even the stricter ATDS interpretation that QCS favors. (*See* Dkt. 1 at ¶ 17.) In a declaration attached to Defendant's Motion, QCS's president insists that the dialer supposedly "does not have the capacity" to generate random or sequential numbers. (Dkt. 40–1 at ¶ 9.) Of course, the question of what constitutes an ATDS is a "highly fact-specific inquiry" better addressed with a "more developed factual record," and after the plaintiff has "an opportunity to test the declaration[s] through discovery or deposition." *Abante Rooter and Plumbing, Inc. v. Nationwide Mut. Ins. Co.*, No. 17-cv-03328-EMC, 2018 WL 573576, at *2, n. 2 (N.D. Cal. Jan. 26, 2018). But the pendency of the Supreme Court's decision in *Duguid* is no reason to postpone that discovery—either way, the nature of QCS's dialer must be tested through discovery.

Put simply, discovery is necessary to discern what Defendant's dialer could do, regardless of the Supreme Court's ruling. Defendant's assertion that *Duguid* would likely "eliminate" Plaintiff's claim is simply not true. The Supreme Court's upcoming review concerns the definition of an ATDS; it may change the level of proof required, but proof will be required nonetheless. QCS asks for a stay that will delay necessary and inevitable discovery. For example, in denying a similar motion based on *Duguid*, the District of Arizona reasoned that "regardless of the results in *Facebook* [*v. Duguid*]…[the defendant] will be required to engage in discovery." *Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR, dkt. 26 at 2 (D. Ariz. July 17, 2020) (attached hereto as "Exhibit B"). The court denied the requested stay because "discovery issues are not likely to be mooted and resources are not likely to be spared"—the same is true here. *Id.*

Defendant asks the Court to postpone discovery, but the need for evidence will still remain after the *Duguid* decision. Whether the Supreme Court holds that a random number generator is required or not, Plaintiff has alleged that QCS's dialing equipment has such capability, and his allegations must be supported through discovery. No issues will be resolved or eliminated by a decision in *Duguid* favorable to QCS's position. There is simply no justification for delaying the discovery process. Accordingly, the Court should deny QCS's request to stay the ATDS claim.

## B.      The *Landis* Factors Do Not Support Granting A Stay.

Extrapolating from its misguided claim that the Supreme Court's *Duguid* decision will "eliminate" Plaintiff's ATDS claim, QCS argues that the stay it seeks is supposedly favored by each of factors set forth in *Landis*. But Defendant's analysis again misses the mark, as QCS maintains focus on its erroneous belief that Trujillo's ATDS claim may be "barred" by the Supreme Court's decision. (Dkt. 40 at 11.)  Plaintiff's ability to pursue his cause of action would be harmed by a stay, while the only real "hardship" that Defendant will face are the natural costs of discovery and litigation—QCS's assertion that the claim may be eliminated is simply unfounded. Likewise, judicial economy will not be served by a stay. In short, a stay pursuant to *Landis* is unsupported.

In *Landis*, the Supreme Court acknowledged that courts have inherent power to control their own dockets, including the power to stay. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). However, any party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. Only in "rare circumstances" will a party be compelled to stand aside while a litigant in another case settles the rule of law that will define the rights of

both. *Id.* As Defendant points out, the Ninth Circuit has distilled a three-factor test of competing interests to weigh when considering granting a stay under *Landis*: (1) the possible damage that may result from granting a stay; (2) the hardship or inequity that a party may suffer by going forward; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay," commonly referred to as judicial economy. (Dkt. 40 at 8); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). As explained below, these factors do not weigh in favor of Defendant's request to partially stay these proceedings.

### 1.   Plaintiff will suffer harm in the form of stale and unavailable evidence if a stay is granted.

With regard to the first *Landis* factor, Defendant claims that a partial stay poses no risk of harm to Plaintiff. (Dkt. 40 at 9.) QCS supports its argument by glossing over the necessity for injunctive relief, citing to flawed legal standards, and suggesting that Plaintiff would supposedly suffer harm if a stay is *not* granted. (*Id.* at 10–12.) Defendant's arguments are not effective—Plaintiff is likely to suffer harm if a stay is granted.

While delay in recovery of statutory damages may not prejudice Plaintiff or the Classes, Trujillo also seeks injunctive relief in his Complaint, which is necessary to prevent QCS from continuing its unlawful telemarketing practices. (Dkt. 1 at 12 (seeking "[a]n injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes"); *see also id.* at ¶¶ 6, 33.) QCS dismisses these requests as "passing" and "conclusory" because Plaintiff has not alleged receipt of any text messages in addition to those in the complaint. (Dkt. 40 at 11.) But Plaintiff alleged grievances from numerous other

consumers, indicating that QCS's practice is widespread and will continue until stopped. (Dkt. 1 at ¶¶ 16, 19.) Further, QCS does not dispute that it sends text messages—instead, Defendant insists that the messages are required by law, suggesting that it will continue to send these messages unless and until compelled to stop by injunction. (*See* Dkt. 40 at 4, 9–10; *see also* Dkt. 40-1 at ¶¶ 3–4, 8.) Thus, every month that this matter is delayed is another month for Defendant to continue its automated telemarketing campaign unchecked and exacerbate the harms at issue in the case.

In addition to the harms associated with continuing unsolicited text messaging activity, Plaintiff's ability to pursue this action would be harmed by a stay. Generally, a delay that results from a stay can harm plaintiffs because it threatens the availability of evidence. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir. 2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). Because the case is in its early stages, Defendant is effectively asking to stay all ATDS and class discovery until the Supreme Court reaches a decision in *Duguid*—Defendant does not suggest when this may be, but even if oral arguments are heard before the end of the year, a decision may not be rendered until as late as July 2021.[1] If Plaintiff is unable to issue discovery or subpoenas to secure evidence possessed by Defendant and its agents for nine months, he will be prejudiced in his ability to support his claims for relief.

While focusing on the monetary damages that Plaintiff seeks to recover, QCS

---

[1] *See Supreme Court Procedures*, UNITED STATES COURTS, https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-1 (last visited Oct. 5, 2020) ("All opinions of the Court are, typically, handed down by the last day of the Court's term (the day in late June/early July when the Court recesses for the summer).")

seems to suggest that Trujillo must demonstrate that he would suffer "irreparable damages and a miscarriage of justice" to avoid a stay. (Dkt. 40 at 10) (citing *CMAX*, 300 F.2d at 268-69). However, that is a heightened standard applicable to a request for preliminary injunction or, in the *CMAX* case, as a means of demonstrating a lower court's abuse of discretion. *CMAX*, 300 F.2d at 268. The first *Landis* factor broadly considers "possible damage" to the non-moving party—"the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a *fair possibility* that the stay for which he prays will *work damage* to some one else." *Landis*, 299 U.S. at 255 (emphasis added). The heightened standard is not germane to this analysis. As stated above, a stay in this case could work damage to Plaintiff and the Classes in several ways. Though this may not represent "irreparable damage" to support a preliminary injunction (which Plaintiff does not seek), it does represent a risk of harm that may be done to Plaintiff and the class members if the case is stayed.

QCS also relies on an incomplete *Landis* citation. The Court in *Canady* found that "the fact that 'a [pending] decision . . . may not settle every question of fact and law in [a] suit[ ] . . . , but in all likelihood . . . will settle many and simplify them all' weighs in favor of granting a stay." *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020) (alterations in original). This quote is pulled from *Landis*; the Supreme Court acknowledged that a prior case would settle many issues in a subsequent case, but it further cautioned that, "[e]ven so, the burden of making out the justice and wisdom of a departure from the beaten track lay heavily on the petitioners, suppliants for relief, and discretion was abused if the stay was not kept within the bounds of moderation." *Landis*, 299 U.S. at 256. Thus, even if *Duguid* were to "settle many and simplify all" issues in this case, QCS would face a heavy burden of overcoming the harm a

stay may cause. Here, and as explained above, waiting for resolution of *Duguid* will not "settle" any issues because Plaintiff has alleged the use of an ATDS that fits even a strict interpretation of the TCPA. The Supreme Court's interpretation will not eliminate his ATDS claim or relieve him of the need for discovery related to QCS's dialing system. Notwithstanding the fact that *Duguid* will have a limited impact on this matter, Defendant has not met its burden to overcome the harm that a stay would pose to Plaintiff.

Finally, Defendant boldly claims that Plaintiff would be harmed if a stay is *not* granted, based on the same misunderstanding of *Duguid* that colors the rest of the motion. By QCS's estimation, Plaintiff could incur trouble and expense in discovery to find out his claim "is barred" following the Supreme Court's ruling. (Dkt. 40 at 11.) But, as Defendant recognizes, the *Duguid* opinion will settle whether a random or sequential number generator is required to prove an ATDS. (*Id.* at 6–7.) Plaintiff has alleged that Defendant's system includes a random number generator—this means that, no matter what the Supreme Court decides, his allegations align with the statutory definition of an ATDS. (*See* Dkt. 1 at ¶ 17.) QCS may contend through declaration that its system does not have such capability, but, once again, this creates a factual dispute that must be resolved through discovery and a chance to test that declaration. *See Abante Rooter*, 2018 WL 573576, at *2, n. 2. Trujillo's claim will not be "barred" by any decision in *Duguid*.

In short, Plaintiff will likely suffer harm if the case is stayed because he would be unable to even discover evidence material to his class claims for up to nine months, during which time Defendant could continue its unlawful practices. The first *Landis* factor weighs against granting the requested stay.

**2.    The only "hardship" that QCS would face in moving forward is the natural consequences of litigation.**

Second, QCS's prediction that it would suffer hardship in the absence of a stay is rooted in its erroneous assessment of the *Duguid* case and of Plaintiff's claims. (*See* Dkt. 40 at 12.) Defendant insists that the *Duguid* decision will render litigation and discovery "unnecessary" if the Supreme Court overturns the Ninth Circuit's decision, contending that Plaintiff's TCPA claim "will likely be gutted by the Supreme Court." (*Id.* at 12–13.) This is simply not true: Trujillo did not make his ATDS allegations, as QCS suggests, under a rejected interpretation that "could no longer be the law of this Circuit in a matter of months . . . ." (*Id.* at 14.)  As explained above, Plaintiff has alleged the use of "a random or sequential number generator." (Dkt. 1 at ¶ 17.) If the Supreme Court upholds *Duguid*, Plaintiff would not necessarily require evidence of a random number generator to meet the ATDS definition; if the decision is overturned, Plaintiff will require such evidence. In either event, regardless of the Supreme Court's decision, Trujillo must obtain evidence of the dialing system that was actually used to send the allegedly unlawful text messages. But the *Duguid* decision cannot and will not "gut" Plaintiff's case because he did not predicate his ATDS claim on allegations that QCS's system only dialed from a stored list.

QCS seeks a stay to delay necessary and inevitable discovery—it will not suffer hardship in proceeding, aside from the ordinary expenses associated with litigation, which are certain and insufficient to justify postponing this matter for nine months. *See Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'") Plaintiff is not seeking to "exact a company-ending judgment," but to redress the injuries caused to himself and the class members. (Dkt. 40 at 14.) As it did in its prior motion to stay, Defendant briefly suggests it would suffer prejudice in proceeding due to the impact of the national pandemic on its operations. (*Id.* at 13.) Care can be

taken to conduct discovery in a manner that is safe and cost-effective, but a broad stay of discovery would only inject more uncertainty into QCS's operations and this action. No one can (and Defendant does not) predict when business may return to "normal" for companies across the country, including QCS. Defendant cannot demonstrate any hardship or inequity that would be avoided by staying this matter, and thus this factor does not favor granting the requested stay.

### 3. Considerations of judicial economy support denying the request for a stay.

The third and final *Landis* factor—judicial economy—would not be served by a stay. Judicial economy may be served where a stay would avoid wasting resources or potentially moot claims. *See, e.g.*, *Youngbloods v. BMG Music*, No. 07 Civ. 2394(GBD)(KNF), 2011 WL 43510, at *5 (S.D.N.Y. Jan. 6, 2011). Defendant asserts that the same consideration should be given to *Duguid* as QCS asked the Court to give *AAPC* in its first motion, claiming that "the Supreme Court's decision in [*Duguid v.*] *Facebook* may be dispositive of Plaintiff's ATDS claim." (Dkt. 40 at 14.) However, QCS provides no real support for this claim. As explained above, *Duguid* will not dispose of Trujillo's ATDS claim because his allegations are based on a strict interpretation of the statutory definition—one that QCS believes will be adopted. (Dkt. 1 at ¶ 17; *see* Dkt. 40 at 1.) Thus, whether or not the Supreme Court holds that a number generator is necessary to finding an ATDS, this case will proceed. Plaintiff will still need discovery to prove his allegation that the text messages were sent using an ATDS.

Unlike the *AAPC* decision, which admittedly could have been "outcome-determinative" if the Supreme Court had made the unlikely choice to deem the entire autodialer ban unconstitutional, a decision either way in *Duguid* will not moot any issues, and TCPA plaintiffs like Trujillo will still need to establish the use

of an autodialer to succeed on such a claim. The parties will need to engage in fact finding on the same issues after *Duguid* as they need to discover now, including the nature and attendant capacity of QCS's dialer. *Duguid* may modify the category of devices that fit into the definition of an ATDS, but it will not obviate the need for evidentiary proof. It would be senseless to postpone discovery *for nine months* while the Court and parties await a decision that will not moot any issues.

There is simply no support for staying this matter. QCS asks that Plaintiff's ATDS claim and *all* class discovery be postponed for nearly a year on the misguided belief that a change in the definition of an ATDS would "gut" Trujillo's cause of action. Discovery may reveal that QCS's system does, in fact, feature random number generation capabilities, in which case Defendant's dialer would fit the ATDS definition under any interpretation. If no such capability is found, Defendant may still be liable if the Supreme Court employs an interpretation that aligns with *Duguid*. Nevertheless, it would be inefficient to stay discovery until the Court rules.

Just as was the case in *Whittaker*, "discovery issues are not likely to be mooted and resources are not likely to be spared" by postponing discovery until the *Duguid* case is resolved. (Ex. B at 2.) Time will be required to conduct such discovery no matter what, and delaying the inevitable does not serve judicial economy. This factor does not favor granting a stay.

### 4.     Defendant's additional considerations do not move the needle.

As it did in its previous motion, QCS claims, in addition to the *Landis* factors, that granting the requested partial stay would further the interests of the public and of non-parties. (Dkt. 40 at 15–16.) Defendant argues that a stay is supposedly necessary to prevent invasive discovery that, according to QCS, seeks

"detailed information about individuals who qualified to receive free weatherization services." (*Id.* at 16.) To be clear, Plaintiff's discovery requests seek identification of any consumers that received text messages in a manner similar to Plaintiff—the focus is on determining whether QCS subjected consumers to these text messages as a matter of common practice, and how many such consumers were affected. (*See* Dkt. 40-5 at 7–8, Interrogatory Nos. 2, 6.) Plaintiff does not seek any information regarding income of consumers, and if Defendant is concerned for consumer privacy, discovery can be exchanged under a protective order.

QCS also suggests in a footnote that it would have "no choice" but to depose *putative* class members to combat class certification. (Dkt. 40 at 16, n. 5.) If the classes do, in fact, contain "hundreds, if not thousands of members" as Plaintiff suspects, deposition of all putative class members would be inappropriate, impractical, and frankly impermissible. *See* Fed. R. Civ. P. 30(a). Thankfully, discovery can (and surely will) be limited by a case management order, the Court, the parties themselves, and the Federal Rules concerning discovery, and care will be taken to conduct any depositions or discovery remotely unless and until it is safe to do otherwise. Further, despite Defendant's attempts to exaggerate the extent of discovery that will be required in this matter, the inevitable scope and nature of class discovery will not be ameliorated by a stay.

Finally, QCS points to a number of cases where stays have been entered to suggest that the Court should just "follow suit." (Dkt. 40 at 18.) Defendant also asks the Court to subvert the *Landis* standard and grant a stay simply because *Duguid* may "provide guidance" on a non-dispositive issue. (*Id.* at 17.) The correct analysis should be rooted in the *Landis* factors as applicable in this matter, not in other cases or a relaxed standard as suggested by QCS. Defendant has not met its burden to

overcome the potential harm to Plaintiff's ability to pursue his claims by
demonstrating substantial hardship that would warrant a stay.

In short, there is no support for entering a partial stay. This is not one of the
"rare" instances where a party should be made to stand aside while a pertinent rule
of law is decided. *Landis*, 299 U.S at 255. QCS asks that Plaintiff's case be
postponed so that Defendant can wait for a Supreme Court ruling that will not
dispose of even *one* of Plaintiff's claims. Each of the *Landis* factors weighs against
the requested stay, and postponing Plaintiff's ATDS claim and inevitable class
discovery for nine months would be inappropriate. Accordingly, Defendant's
motion should be denied.

## C. Defendant Has Provided No Credible Justification For Staying Discovery On Trujillo's DNC Claim.

In addition to Defendant's flawed analysis of the *Landis* factors in the context
of staying the ATDS claim, QCS's request to stay class discovery on Plaintiff's
DNC claim is wholly unsupported. The motion focuses heavily on the ATDS claim
and the effect that the Supreme Court's *Duguid* decision may have on these
proceedings, but Defendant fails to provide justification for staying the class portion
of Plaintiff's DNC claim—the same partial stay that QCS unilaterally sought after
conferring with counsel for Plaintiff, resulting in disagreement and the filing of this
motion. (*See* Ex. A at ¶¶ 4–6.)

As QCS suggests in its factual background, counsel for Plaintiff indicated
during conferral that Plaintiff would agree to consent to a partial stay of only the
ATDS claim, provided that his DNC claim would proceed. (*Id.* at ¶ 4.) Counsel for
Defendant thereafter provided a draft stipulation that included language purporting
to also stay all class discovery and proceedings related to Plaintiff's DNC claim—
Plaintiff never agreed to consent to this, and his counsel reiterated as much in

1  response to the draft stipulation. (*Id.* at ¶¶ 5–6.) QCS subsequently filed the instant

2  motion, seeking both stays. (*See id.* at ¶ 7; Dkt. 40 at 1–2.)

3      However, QCS provides scant justification for staying class discovery of

4  Plaintiff's DNC claim. In fact, the only (repeated) argument that Defendant makes

5  for partially staying the DNC claim is that QCS's "forthcoming summary judgment

6  motion" will supposedly defeat the claim on its face. (*See* Dkt. 40 at 1–2, 4, 7, 9.)

7  Of course, the Federal Rules permit Defendant to file a motion for summary

8  judgment at this stage if it so chooses. *See* FED. R. CIV. P. 56(b). But phasing

9  discovery by granting the requested partial stay would simply give QCS a free bite

10  at the apple. That is, the one-way intervention rule, which bars granting class

11  certification after the merits have already been decided in a plaintiff's favor, would

12  preclude Plaintiff, but not Defendant, from moving for summary judgment prior to

13  class certification. *See, e.g.*, *Gessele v. Jack in the Box, Inc.,* No. C10–0960, 2012

14  WL 3686274, at *3 (D. Or. Aug. 24, 2012) (quotations omitted); *Gomez v. Rossi*

15  *Concrete, Inc.,* No. C08–1442, 2011 WL 666888, at *1 (S.D. Cal. Feb.17, 2011)

16  ("Absent extraordinary circumstances, it is appropriate to postpone ruling on a

17  plaintiff's motion for summary judgment until after class definition issues are

18  settled, notice has been given, and the period for class members to exclude

19  themselves has expired[.]"). As such, deciding the merits of Trujillo's DNC claim

20  first would allow QCS to take a free shot at defeating the claim and, if unsuccessful,

21  to then try to defeat class certification and then judgment in favor of the class. Such

22  a process is inefficient—the addition of this extra step inures only to QCS's benefit

23  and adds more delay to these proceedings (which benefits Defendant and, as

24  explained above, harms Plaintiff).

25      Defendant has no credible argument for staying class discovery related to the

26  DNC claim because no such argument exists. While *Duguid* could change the level

1  of proof required for an ATDS (though it will not alter Plaintiff's claim), Trujillo's

2  DNC claim will in no way be impacted by the Supreme Court's decision. QCS

3  seeks only to dissect and delay these proceedings as long as it can, and to award

4  itself a free bite at the apple. This approach is inefficient, and the Court should deny

5  the request to stay class discovery and proceedings on Plaintiff's DNC claim.

6  **IV.    CONCLUSION**

7          The Court should deny Defendant's motion to stay. The Supreme Court's

8  review of the ATDS requirements in *Duguid* will not be dispositive here because

9  Plaintiff's allegations align with a strict interpretation of the statutory definition,

10  and he must obtain discovery on the dialer used by QCS either way. Further, the

11  *Landis* factors do not favor Defendant's plea to halt discovery for up to nine

12  months. Plaintiff and the Classes would likely suffer harm in if such a stay is

13  granted, and QCS will not suffer any "hardship" in proceeding beside the inevitable

14  cost of litigation. Likewise, Defendant cannot justify a stay of all class discovery

15  related to Plaintiff's DNC claim—staying in part would simply give QCS a free

16  shot at defeating the claim and add further delay and inefficiency to the case.

17  Accordingly, the Court should deny the motion, permit the parties to proceed, and

18  award any such relief as it deems necessary and just.

19

20                                    Respectfully Submitted,

21                                    **MICHAEL TRUJILLO**, individually and

22                                    on behalf of all others similarly situated,

23  Dated: October 9, 2020            By: ___/s/ Patrick H. Peluso___

24                                         One of Plaintiff's Attorneys

25                                    Afshin Siman (Cal. Bar No. 309956)
26                                    Law Office of Afshin Siman

27  PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY STAY
    PROCEEDINGS
28  -19-

6210 Wilshire Blvd., Suite 211
Los Angeles, CA 90048
Telephone: (424) 229-9778
siman@simanlawfirm.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809
*Pro Hac Vice

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on October 9, 2020.

/s/ Patrick H. Peluso