AFSHIN SIMAN
LAW OFFICE OF AFSHIN SIMAN
6210 Wilshire Blvd., Suite 211
Los Angeles, CA 90048
(424) 229-9778
siman@simanlawfirm.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Pro Hac Vice

Attorneys for Plaintiff and the Putative Class

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL TRUJILLO**, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **FREE ENERGY SAVINGS COMPANY, d/b/a QUALITY CONSERVATION SERVICES**, a Delaware limited liability company, <br><br> Defendant. | Case No. 5:19-cv-02072 -MCS-SP <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Date: December 7, 2020 <br> Time: 9:00 AM <br> Judge: Hon. Mark C. Scarsi <br> Place: Courtroom 7C <br><br> Complaint Filed: October 29, 2019 <br><br> Trial Date: August 24, 2021 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………iii

I.      INTRODUCTION……………………………………………… 1

II.     BACKGROUND…………………………………………………2

III.    ARGUMENT………………………………………………… 5

     A.     QCS ignores over 100 years of Supreme Court precedent, cited favorably in *AAPC*, that holds unconstitutional amendments are a nullity and, therefore, powerless to work any change to existing statutes……………………………………………………..6

     B.     Try as it may, QCS cannot delete Justice Kavanaugh's judgment as to severability, of which Footnote 12 is part, and which unambiguously contradicts QCS and the opinions reached in *Creasy* and *Lindenbaum*……………………………………………..9

     C.     The Supreme Court's decision in *Seila Law* in no way supports QCS's argument……………………………………………12

     D.     There is no question that Congress intended the robocall restriction to remain valid………………………………….……15

IV.    CONCLUSION………………………………………………16

# TABLE OF AUTHORITIES

**CASES**

*Barr v. American Association of Political Consultants, Inc.*, No. 19-631,
140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) .......................................... *passim*

*Creasy v. Charter Comms., Inc.*, --- F.3d ---, No. 2:20-CV-01199,
2020 WL 5761117 (E.D. La. Sept. 28, 2020) .............................................1, 7

*Eberle v. People of State of Michigan*, 232 U.S. 700, 34 S. Ct. 464,
58 L. Ed. 803 (1914) ...................................................................................6

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 130 S. Ct.
3138, 177 L. Ed. 2d 706 (2010) ...................................................................7

*Frost v. Corp. Comm'n*, 278 U.S. 515, 49 S. Ct. 235,
73 L. Ed. 483 (1929) .........................................................................6, 7, 13

*Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB,
2019 WL 4645524 (D. Mass. Sept. 24, 2019)..............................................4

*Lindenbaum v. Reagly, LLC*, No. 1:19-CV-2862, 2020 WL 6361915
(N.D. Ohio Oct. 29, 2020)..................................................................1, 7, 8

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018) ................2

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740,
181 L. Ed. 2d 881 (2012) ...........................................................................2

*Seila Law, LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183,
207 L. Ed. 2d 494 (2020) ......................................................................13, 14

*Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-NKL, 2019 WL 6499140,
(W.D. Mo. Dec. 3, 2019)............................................................................. 3

*Wilson v. PH Phase One Operations L.P.*, No. CV DKC 18-3285,
2019 WL 4735483 (D. Md. Sept. 27, 2019) ................................................4

**STATUTES, RULES, AND OTHER SOURCES**

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*...................................1

Dodd-Frank Wall Street Reform and Consumer Protection Act,

      124 Stat. 1376................................................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Seeking to avoid this lawsuit challenging its serial violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA" or the "Act"), Defendant Free Energy Saving Company, LLC d/b/a Quality Conservation Services ("QCS" or "Defendant") moves this Court for judgment on the pleadings.[1] To hear QCS tell it, the Supreme Court's recent decision in *Barr v. American Association of Political Consultants, Inc*. ("*AAPC*"), 140 S. Ct. 2335, 2343, 207 L. Ed. 2d 784 (2020), nullified the entirety of the TCPA from the time the Act was amended in 2015 (the "2015 Amendment") until the date of judgment in *AAPC* on remand—thereby depriving this Court of subject matter jurisdiction.

QCS's reasoning falls apart. Far from declare the last 5 years of the TCPA unconstitutional, *AAPC* did just the opposite. Indeed, QCS turns *AAPC* on its head, overlooking the express language of the *AAPC's* judgment as to severability, QCS insists that the TCPA simply was without force between 2015 and the date judgment is entered in *AAPC*.

While QCS's lawyers have convinced two district courts to agree,[2] this Court should refuse to be the third. The decisions in *Creasy* and *Lindenbaum* ignore over 100 years of Supreme Court precedent, cited favorably in *AAPC*, that holds unconstitutional amendments are a nullity and are "powerless to work any change to existing statutes." Likewise, QCS gives short shrift to the actual language of

---

[1] QCS filed a Motion to Partially Stay this case (dkt. 40) which was denied on November 2, 2020. (Dkt. 54.) QCS has also filed a Motion for Partial Summary Judgment (dkt. 58.)—all in an effort to avoid engaging in discovery and being made to answer for its violations of the law.

[2] *See Creasy v. Charter Comms., Inc*., --- F.3d ---, No. 2:20-CV-01199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) ("*Creasy*") and *Lindenbaum v. Reagly, LLC*, No. 1:19-CV-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ("*Lindenbaum*").

*AAPC* and its judgment with respect to severability—which was endorsed by seven of the justices—all while placing undue weight on *Seila Law LLC v. CFPB*, a recent severability decision that doesn't actually support its extreme reading of the law. Finally, and as Justice Kavanaugh explains, it cannot be disputed that "[T]he people's representatives have made crystal clear that robocalls must be restricted." *AAPC*, 140 S. Ct. at 2356. QCS's approach, as endorsed by *Creasy* and *Lindenbaum,* seeks to override legislative intent and impermissibly rewrite the TCPA out of existence.

In short, and as explained further below, *Creasy* and *Lindenbaum* were incorrectly decided, and the Court should refuse to grant judgment on the pleadings.

## II.    BACKGROUND

Before explaining the legal infirmities that undermine QCS's argument, a brief review of the TCPA and the arguments that brought us here is helpful.

### *The TCPA, in Effect Since 1991, was Amended in 2015*

In 1991, "[v]oluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71, 132 S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012) ("Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls."); *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289, 203 L. Ed. 2d 300 (2019) (explaining that "[t]elemarketing sales had 'skyrocketed to over $435 million in 1990,' which was a 'fourfold increase since 1984.'") (citing 137 Cong. Rec. S16,971 (daily ed. June 27, 1991) (statement of Rep. Pressler)).

Despite the law's enactment and steady enforcement over the past several decades, incessant telemarketing continues to this day. As explained by the Court in *AAPC,* "[t]he Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back…[t]he Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." 140 S. Ct. at 2343.

### TCPA Defendants challenged the constitutionality of the government-debt exception

Despite the generally longstanding prohibition on robocalls, in 2015 Congress amended the TCPA as part of the Bipartisan Budget Act to "allow robocalls that are made to collect debts owed to or guaranteed by the Federal Government, including robocalls made to collect many student loan and mortgage debts." *Id*. In response, TCPA defendants began mounting legal challenges, claiming that the 2015 Amendment violated the First Amendment to the Constitution by favoring certain speech. For a remedy, they asked these courts to declare the entire Act unconstitutional.

In response, multiple courts *partly* agreed and found that the government debt collection violated the First Amendment. At the same time, these courts also found that the exception, having been added in 2015, is severable in light of the TCPA's severability clause and does nothing to negate liability under the otherwise valid robocall prohibitions while it was supposedly in effect. *See, e.g., Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-NKL, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019) ("Given the general presumption in favor of severability, the apparent Congressional intent that the unconstitutional provision be severed, and the TCPA's

1  demonstrated ability to be fully operative without the severed provision, the Court

2  finds the government-debt exception is severable. Other courts have found the

3  same.") (citing *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 268 (D. Del.

4  2019) ("There is no evidence that Congress would not have enacted the TCPA

5  without the exception for government debt."); *Wilson v. PH Phase One Operations*

6  *L.P.*, No. CV DKC 18-3285, 2019 WL 4735483 (D. Md. Sept. 27, 2019); *Katz v.*

7  *Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 4645524 (D. Mass.

8  Sept. 24, 2019)).

9  ***The Supreme Court in AAPC severed the government debt collection exception***

10  ***but upheld the remainder of the TCPA***

11       The issue eventually reached the Supreme Court in *AAPC*. Examining the

12  nature of the 2015 Amendment, the plurality Opinion explained that:

13      In short, the robocall restriction with the government-debt exception is

14      content-based. Under the Court's precedents, a "law that is content

15      based" is "subject to strict scrutiny." *Reed*, 576 U.S., at 165, 135 S.Ct.

16      2218. The Government concedes that it cannot satisfy strict scrutiny to

17      justify the government-debt exception. We agree.

18  *AAPC*, 140 S. Ct. at 2347. "Having concluded that the 2015 government-debt

19  exception created an unconstitutional exception to the 1991 robocall restriction,"

20  the *AAPC* Court's analysis turned to "whether to invalidate the entire 1991 robocall

21  restriction, or instead to invalidate and sever the 2015 government-debt exception."

22  *Id.* at 2348. Expressly rejecting AAPC's assertion that the entire 1991 robocall

23  restriction was unconstitutional, the Court addressed whether the 2015 Amendment

24  could be severed from the rest of the statute, ultimately concluding that "the text of

25  the Communications Act's severability clause requires that the Court sever the 2015

26

27

28

government-debt exception from the remainder of the statute." *Id.* at 2353–54.[3]

This didn't end the analysis, however. Explaining that, "[t]his is an equal-treatment case, and equal-treatment cases can sometimes pose complicated severability questions," Justice Kavanaugh's opinion additionally addressed the appropriate remedy, namely whether to "extend benefits or burdens, rather than nullifying the benefits or burdens." *Id.* at 2354. Observing that "[t]he government-debt exception is a relatively narrow exception to the broad robocall restriction, and severing the government-debt exception does not raise any other constitutional problems," Justice Kavanaugh concluded his opinion with the following holding:

> [A]s we have explained, severing the 2015 government-debt exception cures the unequal treatment and constitutes the proper result under the Court's traditional severability principles. ***In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction***.

*Id.* at 2355 (emphasis added).

Ignoring this language entirely, QCS claims that the *AAPC* decision actually requires the opposite conclusion. As explained below, this Court should deny its Motion for Judgment on the Pleadings.

## III.   ARGUMENT

QCS ignores binding Supreme Court precedent that holds unconstitutional amendments are powerless to change existing statutes and fails to accord sufficient weight to Justice Kavanaugh's specific ruling that the robocall prohibition remained in effect. Likewise, QCS's reliance on *Seila Law* is misplaced, and the Court should reject its invitation to rewrite the TCPA in a way Congress plainly never intended.

---

[3] The Court additionally explained that the 2015 Amendment would've been severable under a presumption of severability.  *AAPC*, No. 19-631, 18.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.    QCS ignores over 100 years of Supreme Court precedent, cited favorably in *AAPC*, that holds unconstitutional amendments are a nullity and, therefore, powerless to work any change to existing statutes.**

The first problem for QCS is that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (*citing Frost v. Corp. Comm'n*, 278 U.S. 515, 527, 49 S. Ct. 235, 239, 73 L. Ed. 483 (1929); *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803)). Put simply, unconstitutional amendments have no impact on the original statute. As the Supreme Court explained in *Frost*:

> Here it is conceded that the statute, before the amendment, was entirely valid. When passed, it expressed the will of the Legislature which enacted it. Without an express repeal, a different Legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent.

*Frost*, 278 U.S. 515, 526–27 (explaining further that "no law can be changed or repealed by a subsequent act which is void because unconstitutional. An act which violates the Constitution has no power and can, of course, neither build up nor tear down. It can neither create new rights nor destroy existing ones. It is an empty legislative declaration without force or vitality.") (citing *In Carr, Auditor, v. State ex rel. Coetlosquet*, 127 Ind. 204, 215, 26 N. E. 778, 781 (11 L. R. A. 370, 22 Am. St. Rep. 624)); *see also Eberle v. People of State of Michigan*, 232 U.S. 700, 705, 34 S. Ct. 464, 465, 58 L. Ed. 803 (1914) ("[I]n the case at bar the original local option law of 1889 had been held to be constitutional as a whole, and its validity

could not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities.")[4]

QCS's Motion for Judgment on the Pleadings makes no mention of *Frost* or *Eberle*, nor of *AAPC's* favorable treatment of both cases. The silence speaks volumes. QCS has no persuasive answer to this authority because it plainly holds that an unconstitutional amendment, like the TCPA's government debt-collection provision added to the statute in 2015, "is an empty legislative declaration without force or vitality." Had the TCPA not existed as a constitutional law prior to the amendment, QCS's position might carry more weight[5]; however, it is undisputed that the TCPA was constitutional prior to the addition of the government debt collection exception and that the amendment, added years later, is unconstitutional. As such, the 2015 amendment was "powerless to work any change in the existing [TCPA, and] that statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. 515, 526–27.

Though Judge Feldman's decision in *Creasy* similarly makes no mention of either *Frost* or *Eberle*, Judge Gaughan admittedly attempted to distinguish *Eberle* in *Lindenbaum*. This Court should reject her analysis. First, the *Lindenbaum* decision failed to address *Frost*, which is even more on point than *Eberle* and plainly held

---

[4] These authorities most closely adhere to the Supreme Court's approach to severability more generally, which emphasizes judicial modesty. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508, 130 S. Ct. 3138, 3161, 177 L. Ed. 2d 706 (2010) (explaining that "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem," severing any "problematic portions while leaving the remainder intact.") (citing *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 328–329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006)).

[5] *See* Section III.C., *infra* (citing *Frost*, 278 U.S. at 525).

that "no law can be changed or repealed by a subsequent act which is void because unconstitutional." 278 U.S. at 527 (Internal citations omitted).

Second, *Lindenbaum* pointed out that in *Eberle*, a state Supreme Court had found the statute was initially constitutional, while in *AAPC* the U.S. Supreme Court determined constitutionality. This is a distinction without a difference: the inquiry is whether a statute that was previously constitutional had an amendment tacked on later that is unconstitutional but ultimately severed. It shouldn't matter whether the Court that determined constitutionality in the first instance was State or Federal nor did this impact the *AAPC* decision.

Third, Judge Gaughan incorrectly rejected the notion that an unconstitutional amendment is void *ab initio*. *Lindenbaum*, No. 1:19 CV 2862, 2020 WL 6361915, at *7 (N.D. Ohio Oct. 29, 2020). In doing so, she ignored Justice Kavanaugh's explanation that "an unconstitutional statutory amendment 'is a nullity' and 'void' ***when enacted***, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (emphasis added). Judge Gaughan responds that the amendment couldn't actually be void *ab initio* because Footnote 12, discussed in greater detail in the next section, specified that the decision reached as to severability wouldn't be used to penalize those who made government-debt collection calls during the time the amendment was operative on the (mistaken) belief that the exception comported with the Constitution. If the amendment was never operative at all, then per Judge Gaughan's reasoning there would be no basis for treating it as having been operative with respect to anyone during the period before it was declared unconstitutional.

While Judge Gaughan raises an interesting question as to whether Justice Kavanaugh's Footnote 12 should have gone so far as to shield government debt collectors who relied on the facial validity of the exception for the calls they made

(together with potential doubts about the enforceability of this provision), the existence of this language in the Footnote, which Judge Gaughan otherwise considers "orbiter dicta", shouldn't be used to negate over 100 years of jurisprudence holding firmly that unconstitutional amendments are a nullity when enacted and are powerless to impact otherwise pre-existing constitutional statutes.[6]

In sum, *Eberle* and *Frost*, as recognized expressly in *AAPC*, are good law, and an amendment that is added to an otherwise pre-existing constitutional law that is later severed on grounds that it is unconstitutional does *not* act to poison the entirety of the statute during the time the amendment was in effect. Rather, absent an express repeal of the law, the statute as it existed pre-amendment "must stand as the only valid expression of the legislative intent." Because QCS's position undeniably contradicts such intent, this Court should refuse to adopt it.

**B.     Try as it may, QCS cannot delete Justice Kavanaugh's judgment as to severability, of which Footnote 12 is part, and which unambiguously contradicts QCS and the opinions reached in *Creasy* and *Lindenbaum.***

Relatedly, QCS takes great pains to discount Footnote 12 of Justice Kavanuagh's plurality opinion, which states:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or

---

[6] As explained in the next section, this is particularly the case where, as here, the supposed orbital dicta simply echoes the Court's holding as to severability, which expressly stated that the robocall prohibition shall remain in effect.

1   such date that the lower courts determine is appropriate. See Reply
2   Brief 24. ***On the other side of the ledger, our decision today does not***
3   ***negate the liability of parties who made robocalls covered by the***
4   ***robocall restriction***.

5   *AAPC*, 140 S. Ct. at 2355 n.12 (emphasis added). Despite the plain language used
6   in the footnote, QCS claims the wording "ambiguous" and, echoing *Creasy*, calls
7   this footnote "pure obiter dicta" that "is unnecessary to the decision in the case."
8   (Def. Mot. 11.)

9       QCS's argument is an act of attempted misdirection. While the footnote may
10  not be the Court's holding as to severability, Justice Kavanaugh's severability
11  judgment set forth in Section III—which was joined by 7 of the Justices (the entire
12  Court except for Justices Gorsuch and Thomas)—actually concludes with the
13  following holding: "***In short, the correct result in this case is to sever the 2015***
14  ***government-debt exception and leave in place the longstanding robocall***
15  ***restriction***." *AAPC*, 140 S. Ct. at 2355. (emphasis added). It is <u>this holding</u> to which
16  Footnote 12 is appended, and it makes emphatically clear that with respect to
17  severability, the Court's judgment is that the amendment was severed and the
18  "longstanding robocall restriction" remained in place. *AAPC*, 140 S. Ct. at 2355. By
19  focusing instead on the Footnote 12 and proceeding as if the only holding in the
20  opinion adopted by a majority of the Justices was that the "automated-call ban
21  combined with the government-debt exception was unconstitutional pre-severance,"
22  (Def. Mot. 12) QCS impermissibly writes the express language of the severability
23  holding out of the opinion. There is no basis for doing so other than to shield QCS
24  from liability, and the Court should reject QCS's attempted redraft.

25      Moreover, Footnote 7 of the *AAPC* Opinion addressed the issue of
26  "invalidat[ing] more than just the offending provision". The Court stated:

27
28

1

2    If courts had broad license to invalidate more than just the offending

3    provision, a reviewing court would have to consider what other

4    provisions to invalidate: the whole section, the chapter, the statute, the

5    public law, or something else altogether. Courts would be largely at sea

6    in making that determination, and usually could not do it in a principled

7    way. Here, for example, would a court invalidate all or part of the

8    Bipartisan Budget Act of 2015 rather than all or part of the 1991 TCPA?

9    After all, that 2015 Bipartisan Budget Act, not the 1991 TCPA, added

10   the constitutionally problematic government-debt exception. That is the

11   kind of free-wheeling policy question that the Court's presumption of

12   severability avoids.

13   *AAPC,* 140 S. Ct. at 2351, n.7. Thus, following QCS' argument to its logical end

14   would result in the entire Bipartisan Budget Act of 2015 being invalidated. The

15   Court should decline to reach such a conclusion.

16   Adopting QCS's position would also elevate Justice Gorsuch's dissent, in

17   which only Justice Thomas joined, above the majority's severability judgment.

18   QCS fails to provide any rationale for this. Justice Gorsuch, in *dicta* of his own,

19   described the majority's severability judgment as a "suggestion," but that doesn't

20   negate its legal effect. Section III's judgment as to severability states clearly that

21   "the correct result in this case is to sever the 2015 government-debt exception ***and***

22   ***leave in place the longstanding robocall restriction***," *AAPC*, 140 S. Ct. at 2355

23   (emphasis added), before ever reaching the footnote—which essentially repeated

24   the holding for emphasis.

25   Further, and as explained above, characterizing Footnote 12 as dicta would

26   work to potentially harm those callers who, unlike QCS, in good faith made

27

28

"robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in *AAPC*." Footnote 12 serves to protect from liability those callers who, relying on the apparently facial validity of the government-debt exception, weren't actually excepted from the TCPA. Discounting Footnote 12 as "pure obiter dicta" would have the likely impact of exposing these callers to potential liability.

Finally, QCS claims that Footnote 12, at most, only applies to past *judgments* reached during period of time the government-debt collection exception was supposedly in force. (Def. Mot. 12-13.) The Court should refuse this attempted re-write as well: as much as it is improper to delete language from the decision that QCS find unfavorable, it is equally improvident to insert language that simply isn't there. Indeed, nowhere does Footnote 12, or Section III's severability judgment, ever purport to "leave in place" only judgments that were reached during the pre-severance period.

QCS's discussion of Footnote 12 continues to turn the actual decision reached in *AAPC* on its head: QCS asks this Court to strike "the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction" from the judgment as to severability while at the same time it tries to read language limiting the holding (as repeated in Footnote 12) solely to past judgments into the decision that simply isn't there. While QCS's same lawyers may have convinced two out-of-circuit district courts to reimagine *AAPC* in this way, this Court should not be so similarly persuaded.

## C.   The Supreme Court's decision in *Seila Law* in no way supports QCS's argument.

1    QCS also maintains that the Supreme Court's decision in *Seila Law*, *LLC v.*

2    *Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2193, 207 L. Ed. 2d 494 (2020),

3    which was issued this past June, supports its position that the entire TCPA from

4    2015 until now was rendered a nullity by *AAPC*. (Def. Mot. 14-16.) Fortunately for

5    consumers harmed by QCS's telemarketing, *Seila Law* does no such thing.

6    First, *Seila Law* doesn't address the situation present in *Eberle*, *Frost*, *AAPC*

7    and, by extension, the instant matter: the impact of an unconstitutional amendment

8    that was added to an otherwise constitutional law once the amendment has been

9    severed. *Seila Law* challenged the make-up of the Consumer Financial Protection

10   Bureau ("CFPB"), specifically restrictions placed on the President's ability to

11   remove the Bureau's single director under The Dodd-Frank Wall Street Reform and

12   Consumer Protection Act ("Dodd-Frank"), 124 Stat. 1376. *Seila Law* concluded

13   that such restrictions violated the Constitution's separation of powers. Critically,

14   however, at no point does the decision address the impact of *any* amendments to

15   Dodd-Frank—the restrictions on the President's ability to remove the CFPB's

16   Director were included in the original act. *See, e.g., Frost*, 278 U.S. at 525

17   (explaining that "If section 3714 as originally passed had contained the proviso, the

18   effect would be to render the entire section invalid…. But the proviso here in

19   question was not in the original section. It was added by way of amendment many

20   years after the original section was enacted."). As such, the key question in this

21   matter—whether an unconstitutional amendment to the TCPA rendered the entire

22   Act unconstitutional during the period in which the Amendment was in effect (from

23   enactment prior to judgment severing it in *AAPC*)—simply wasn't implicated or

24   addressed in *Seila Law* in any way. As such, *Seila Law* is inapposite.

25   Second, even if the Court were to consider *Seila Law* on point (it shouldn't)

26   in remanding the case for further consideration, *Seila Law* focused on

Congressional intent. That is, *Seila Law* required remand to address the Government's position that the demand for documents served on Seila Law, LLC remained enforceable (despite having been issued by a Director who had been granted unconstitutional authority) due to the "ratification" of the demand by an Acting Director. As the *Seila Law* court explained:

> As the defendant in this action, petitioner seeks a straightforward remedy. It asks us to deny the Government's petition to enforce the civil investigative demand and dismiss the case. The Government counters that the demand, though initially issued by a Director unconstitutionally insulated from removal, can still be enforced on remand because it has since been ratified by an Acting Director accountable to the President. The parties dispute whether this alleged ratification in fact occurred and whether, if so, it is legally sufficient to cure the constitutional defect in the original demand. That debate turns on case-specific factual and legal questions not addressed below and not briefed here. A remand for the lower Courts to consider those questions in the first instance is therefore the appropriate course—unless such a remand would be futile.

140 S. Ct. at 2208. In determining whether remand would be futile, the *Seila* Court focused on whether the directorship provision was severable which, in turn, hinged "on the critical question [of] whether Congress would have preferred a dependent CFPB to *no agency at all*." *Id*. at 2183 (Emphasis in original) ("That is the only question we have the authority to decide, and the answer seems clear…[w]e think it clear that Congress would prefer that we use a scalpel rather than a bulldozer in curing the constitutional defect we identify today."). Because the Court refused to conclude that Congress would've wanted no CFPB at all, the majority severed the directorship provision and remanded for further proceedings.

1    If the presence of the offending provision, in and of itself, had been sufficient

2    to render the entire CFPB unconstitutional—as QCS would have this Court

3    believe—then there would have been no need for remand. *Seila Law* reached the

4    opposite conclusion. Moreover, and continuing the trend of judicial restraint

5    exercised in *Seila Law*, Justice Kavanaugh in *AAPC* explained that the preference

6    wasn't to throw out the entire statute but simply to sever the remaining provisions.

7    And of course, the case for honoring Congressional intent and refusing to

8    negate an otherwise constitutional enactment has even greater force where, as here,

9    the offensive provision was present in an *amendment* which was later severed.

10    Again, unlike the directorship provision that was present in Dodd-Frank from the

11    get-go, the government debt collection assessment was added as an amendment to

12    the TCPA—an act that had been otherwise constitutional for decades and can stand

13    independently as the truest expression of legislative intent.

14    As a final point here, Justice Kavanaugh repeatedly cited *Seila Law* favorably

15    in *AAPC* and never once intimated that it rendered the entire TCPA void during the

16    pre-severance life of the 2015 Amendments. Nor did Justice Gorsuch make such a

17    claim in the dissent. This Court should refuse to reach conclusions endorsed by

18    none of the Justices.

19    In short, *Seila Law* doesn't actually offer QCS much support.

20    **D.    There is no question that Congress intended the robocall**

21    **restriction to remain valid.**

22    Lastly, and as Justice Kavanaugh explained in the Court's judgment as to

23    severability, that "[T]he people's representatives have made crystal clear that

24    robocalls must be restricted." *AAPC*, 140 S. Ct. at 2356. QCS understandably

25    desires the opposite: it broke the law and wants a proverbial "get out of jail free"

26    card. But that would require upending the entirety of the TCPA for the last 5

years—an Act that has independently stood as Constitutionally firm since 1991—a conclusion no lawyer or jurist could credibly claim reflects the intent of Congress. While Justice Kavanaugh explained that debt-collectors who had made calls on behalf of the government pursuant to unconstitutional exception couldn't be held liable for calls during that period of time, the robocall restriction plainly stands.

Of course, QCS didn't rely on the exception for government debt collectors—it made telemarketing calls that have been unlawful for decades. This Court should refuse to excuse such violations based upon two district court decisions that disregard the intent of Congress and overlook a century of American jurisprudence.

## IV. CONCLUSION

QCS's arguments fail. QCS fails to cite long-standing precedent that holds unconstitutional amendments are legal nullities that are powerless to impact pre-existing constitutional enactments. QCS also ignores the actual language of Justice Kavanugh's judgment with respect to severability, which a total of 7 justices signed onto, concluding that "the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." Instead, QCS places undue weight on *Seila Law*, a case that, by emphasizing judicial restraint, actually supports Plaintiff Trujillo's position. Ultimately, QCS's argument flatly contradicts Congressional intent, which no one could credibly argue supports a finding that the entire TCPA was ineffective for the last 5 years. While QCS would certainly benefit from such a liability shield, there is simply no legal justification for crafting one.

WHEREFORE, Plaintiff Trujillo respectfully requests that the Court deny QCS's Motion for Judgment on the Pleadings and for such additional relief as the Court deems necessary, reasonable, and just.

Respectfully Submitted,

**MICHAEL TRUJILLO**, individually and on behalf of all others similarly situated,

Dated: November 16, 2020

By: ___/s/ Patrick H. Peluso___
One of Plaintiff's Attorneys

Afshin Siman (Cal. Bar No. 309956)
Law Office of Afshin Siman
6210 Wilshire Blvd., Suite 211
Los Angeles, CA 90048
Telephone: (424) 229-9778
siman@simanlawfirm.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*_Pro Hac Vice_

1   **CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that a true and correct copy of the above

3   titled document was served upon counsel of record by filing such papers via the

4   Court's ECF system on November 16, 2020.

5                                   /s/ Patrick H. Peluso     

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28