UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TRUJILLO,<br><br>Plaintiff,<br><br>v.<br><br>FREE ENERGY SAVINGS COMPANY, LLC, d/b/a QUALITY CONSERVATION SERVICES,<br><br>Defendant. | Case No. 5:19-cv-02072-MCS-SP<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [58]** |

Defendant Free Energy Savings Company, LLC, doing business as Quality Conservation Services, moves for partial summary judgment on Plaintiff Michael Trujillo's do-not-call registry claim. (Mot., ECF No. 58.) The Court heard oral argument on December 7, 2020. For the following reasons, the motion is granted.

**I.  BACKGROUND**

Defendant is a limited liability company that contracts with Richard Health & Associates, Inc. ("RHA") to provide services for Southwest Gas ("SWG") and Southern California Edison ("SCE"), nonparty utility companies. (Statement of Genuine Disputes of Material Fact ("SGDMF") ¶¶ 6, 10, ECF No. 62.) Defendant notifies SWG and SCE's low-income residential customers about free weatherization services pursuant to

1

the utility companies' obligations under the California Public Utilities Code and the Energy Savings Assistance Program. (SGDMF ¶¶ 6, 9–13.) Defendant also provides such services to customers who qualify. (SGDMF ¶¶ 7–8.) These services are not available to the public, and they are not available for consumer purchase. (SGDMF ¶¶ 14–18.) Instead, Defendant is compensated for the services it provides pursuant to its subcontract with RHA. (SGDMF ¶ 8.)

Plaintiff received two identical text messages on August 6, 2019, and August 12, 2019:

> Dear Amanda Schwab: Your Home on Green Tree Blvd may be entitled to Free Weatherization funded by SWG/SCE, including A/C, coolers, LED lights, insulation, window/door repairs, 20% utility discounts. To schedule your free improvements, contact (909) 657-6981 or www.qcsca.com/enroll. -Irene.

(SGDMF ¶ 1.)

Plaintiff alleges that, in violation of the Telephone Consumer Protection Act ("TCPA"), Defendant sent the text messages to Plaintiff even though Plaintiff's number is on the national do-not-call registry. (Compl. ¶¶ 40–45, ECF No. 1.)

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott*

*v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

## III. DISCUSSION

Defendant argues that it is entitled to summary judgment on the claim because (1) it did not place any telephone solicitations to Plaintiff and (2) even if it did, Defendant was permitted to do so because the parties had an established business relationship. The former argument is dispositive of Plaintiff's claim, so the Court declines to reach the latter.

Under the TCPA, "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call-registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c). Telephone solicitation is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14). Generally, the purpose of a call is a question of fact determined by the content and context of the call or message. *Shupe v. Capital One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2018 U.S. Dist. LEXIS 183456, at *14 (D. Ariz. Oct. 25, 2018); *see also Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (turning to content and context of call to determine whether it was

made for a prohibited purpose under similar telemarketing definition).

Defendant argues its text messages were not sent for a prohibited purpose. (Mot. 8–11.) Defendant presents evidence that it provides free weatherization services to SWG's low-income residential customers. (SGDMF ¶¶ 6–11.) These services are not available to the public at large, and consumers cannot purchase them. (SGDMF ¶¶ 15–18.) Thus, Defendant argues, the messages "did not solicit the purchase of anything." (Mot. 8.)

Plaintiff does not substantively dispute these facts. Instead, Plaintiff argues that the text messages Defendant sent ultimately will encourage RHA to purchase weatherization services pursuant to Defendant and RHA's contract. (*See* Opp'n 7, ECF No. 61.) Even if consumers do not purchase the products offered in the subject text messages, Plaintiff argues, RHA pays Defendant to provide the services. (*Id.*; *see, e.g.*, SGDMF ¶ 8 (citing, *inter alia*, Rago Decl. Ex. 1, § 3.2, ECF No. 59-1).) Under its contract with RHA, Defendant is paid commensurate with the services it renders to consumers. (*See* Rago Decl. Ex. 1, Attach. 1, at 44–47 (providing pay schedule billed in "Labor per Hour," "Per Home," "Per SQ FT," etc.).)

Plaintiff's theory assumes that a solicitor can violate the TCPA by encouraging a nonparty to a call or message to purchase, rent, or invest in property, goods, or services. The telephone solicitation definition contemplates a purpose of encouraging purchase, rental, or investment, but it does not specify *whom* the solicitation must encourage. *See* 47 U.S.C. § 227(a)(4). Nonetheless, "neither the statutory nor the regulatory text uses words like 'indirectly purchase' or 'purchase for the benefit of another person.'" *Spiegel v. Reynolds*, No. 15 C 8504, 2017 U.S. Dist. LEXIS 167777, at *13–14 (N.D. Ill. Oct. 11, 2017). Plaintiff has not identified, and the Court has not found, any authority holding that a nonparty to the subject call or message may be the object of the improper encouragement to purchase, rent, or invest. Instead, many district courts have assumed that the target of the caller's encouragement must be the recipient of the call for there to be an improper purpose. *E.g.*, *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020

U.S. Dist. LEXIS 128908, at *8 (N.D. Tex. July 21, 2020) ("Nothing in the complaint suggests that Infogroup ultimately sought to sell or rent any services or product *to Schulz* or solicit an investment *from him*." (emphasis added)); *Freyja v. Dun & Bradstreet, Inc.*, No. CV 14-7831 DSF (MRWx), 2015 U.S. Dist. LEXIS 143866, at *5 (C.D. Cal. Oct. 14, 2015) ("Plaintiff points to no evidence that *she* was subjected to marketing during the call . . . ." (emphasis added)); *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-cv-1459-Orl-36KRS, 2013 U.S. Dist. LEXIS 181732, at *36 (M.D. Fla. Dec. 31, 2013) ("Because neither of the messages in this case encouraged *Murphy* to purchase, rent, or invest in anything, they do not constitute 'telephone solicitations' under the TCPA." (emphasis added)).

The Court need not resolve whether a call or message must aim to encourage the recipient to be considered a solicitation. Assuming Plaintiff's theory is viable, Plaintiff fails to establish a triable issue of fact concerning the purpose of Defendant's messages. Plaintiff asks the Court to infer from Defendant's business model that Defendant has an implicit economic motive to inform consumers about free weatherization services. But a general economic incentive does not equate to, or give rise to a reasonable inference of, a specific purpose to encourage the purchase, rental, or investment in property, goods, or services. *See, e.g.*, *Morris v. UnitedHealthcare Ins. Co.*, No. 4:15-CV-00638-ALM-CAN, 2016 U.S. Dist. LEXIS 168288, at *26–27 (E.D. Tex. Nov. 8, 2016) (rejecting theory that calls informing insured-recipient of free insurance benefits, though commercially advantageous to the insurer-caller, was a telephone solicitation), *R. & R. adopted*, 2016 U.S. Dist. LEXIS 168118 (E.D. Tex. Dec. 6, 2016); *Freyja*, 2015 U.S. Dist. LEXIS 143866, at *5–6 (rejecting theory that calls made to gather information are solicitations solely because defendant sold gathered information to third parties). The text messages themselves do not evince any intent to secure a purchase by RHA or the consumer-recipient; instead, they invite the recipient to schedule free services. (SGDMF ¶ 1.) Indeed, it is undisputed that Defendant cannot receive payment from the consumers it contacts. (SGDMF ¶ 18.) Plaintiff fails to present a triable issue

that Defendant's purpose was to encourage any purchase, rental, or investment, whether by RHA, SWG's customers, or Plaintiff. *See, e.g.*, *Williams v. Nat'l Healthcare Review*, No. 2:15-cv-0054-RFB-PAL, 2017 U.S. Dist. LEXIS 176709, at *20 (D. Nev. Oct. 24, 2017) (determining that calls "seeking to encourage enrollment in a government program that provides free or heavily subsidized healthcare" did not encourage purchase, rental, or investment).

Plaintiff cites authorities discussing commercial motives and economic interests under "unsolicited advertisement" provisions of the TCPA. (Opp'n 5–7.) But the definition of "unsolicited advertisement" is substantively dissimilar to the "telephone solicitation" definition and does not require showing that the advertiser has a particular purpose. *See* 47 U.S.C. § 227(a)(5) (defining unsolicited advertisement as "material advertising the commercial availability or quality of any property, goods, or services"). Plaintiff also relies on a district-court case observing that the telephone solicitation definition "limits its applicability to callers with an economic motive." (Opp'n 5, 7 (citing *Hand v. Beach Entm't KC, LLC*, 425 F. Supp. 3d 1096, 1127 (W.D. Mo. 2019)).) The observation is taken out of context; *Hand* examined the constitutionality of the nonprofit exemption to the telephone solicitation definition under the First Amendment. *See Hand*, 425 F. Supp. 3d at 1125–28. *Hand* offers no guidance on the issue at bar.

At the hearing, Plaintiff argued that Defendant prematurely filed the motion before the conclusion of discovery. The Court declines to consider this argument, which was presented for the first time at the hearing. *Rice Corp. v. Grain Bd. of Iraq*, 582 F. Supp. 2d 1309, 1313 (E.D. Cal. 2008); *see also Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010) (deeming waived contentions raised for the first time at oral argument).

Plaintiff does not identify any other evidence showing the text messages were sent for an improper purpose. Plaintiff has not carried his burden of showing a triable issue on whether the messages are telephone solicitations, so summary judgment is appropriate.

6

## IV. CONCLUSION

The Court grants the motion for partial summary judgment. Plaintiff's second claim is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: December 21, 2020

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE